## KAY & KIOWA OIL CO. v. MOORE et ux.

No. 14329—Opinion Filed Dec. 18, 1923.

(Syllabus.)

**1. Oil and Gas—Operation of Oil Lease—Damages for Injury to Adjacent Land.**

In an action for damages against an oil company for permitting salt water and "B. S." to run on and across the lands of another, thereby causing damage, and where defendant pleads that another company, a tenant of the plaintiff, contributed to the injury, it is not error to overrule a demurrer to the evidence or refuse to direct a

verdict for the defendant, where the evi-. dence is such that the jury can reasonably separate the damages caused by the two companies.

2. Same—Instructions—Sufficiency of Evidence.

Record examined, and held, the instructions of the court fairly submitted the question of damages to the jury, and the evidence is sufficient to support the verdict.

Error from District Court, Kay County; J. W. Bird, Judge.

Action by Henry Moore and another against the Kay & Kiowa Oil Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

James Q. Louthan, J. C. Denton, and R. H. Wills, for plaintiff in error.

G. A. Chappell, for defendant in error.

McNEILL, J. This action was commenced by Henry Moore and Allie Moore, his wife, against the Kay & Kiowa Oil Company for carelessness and negligence in permitting oil, "B. S.", and salt water to flow from an adjoining quarter section of land, on which the defendant had an oil and gas lease, upon the land of plaintiff, from the 6th day of November, 1919, and during the year of 1920.

The defendant answered by way of general denial and pleaded certain affirmative defenses. The case was tried to a jury, and the jury returned a verdict for the plaintiff and against the defendant for $81.75. From said judgment the defendant has appealed.

Plaintiff in error argues but two questions upon appeal. First, that the court erred in submitting the case to the jury and in overruling defendant's demurrer to plaintiff's evidence, and denying motion for peremptory instruction. To support this proposition, the plaintiff in error contends the uncontradicted evidence disclosed the damages were caused partly by the Duluth-Oklahoma Oil Company, which had a lease upon plaintiff's land, and said company not being a party defendant, and there being no evidence from which it was or is possible to separate the damages caused by the Duluth-Oklahoma Company, by reason of said fact the trial court erred in submitting said cause to the jury. Upon this proposition, the parties disagree as to the evidence. The evidence disclosed that the plaintiff had brought a former suit against the defendant and that the same was settled for all damages accruing prior to November 6, 1919.

It is undisputed that prior to the year 1919 one of the wells upon plaintiff's land had damaged a small spot of the grass land,

described as about the size of the court room. Upon the question of whether the evidence is undisputed that the damages could not be separated, we quote the following extracts from the testimony: Mr. Moore testified as follows:

"Q. Is it not a fact, Mr. Moore, that there has been more grass and vegetation killed right there by that tank from water that your people let escape than there was altogether by the Kay & Kiowa Company on the meadow and in the pasture? A. Oh, Lord, no, man; there is a place there about as big as this courthouse, I mean this room, where the water has killed it; you have killed it clear across the whole place about half a block wide: if you want to figure it that way, that is the way it is."

He testified, in substance, that on the Curry place, where defendant company was operating, they had a string of storage tanks, and pumped the oil into these tanks and would draw off the salt water, and the salt water and B. S. flowed into a pond that would cover two acres, and when the pond was full it overflowed and ran down across the Moore farm; that oil from the Curry farm would run onto their land, make little pools of oil, and the pumpers would get that oil and use it for lubricating the engines.

Mr. Ellison testified as follows:

"Q. You saw it come from the dikes on the Curry place? A. I have. I have seen it come even from the tanks. Q. You noticed that particularly? A. Yes, sir. Q. You went there for that purpose? A. No, I was working there; I helped put the leaders and stops in the tanks to turn that off with."

Mr. Wheeler testified as follows:

"Q. That was 1920? A. Yes, sir. * * * Q. Have you seen the water flow from the Curry lease down onto the Moore place? A. Yes, sir. . When? A. In 1920. * * * Q. Did you follow it up to see where it came from? A. Yes, sir. Q. Where did it come from? A. It came from the flow tanks and dikes up there on the Curry lease."

Mr. Junkins testified as follows:

"Q. Take this water that comes down from the east on Mr. Moore's place, where does it come from? A. It comes from the Curry farm. Q. Did you go up there to see it? A. Yes, sir. Q. What did you find up there? A. I found this water running there out of this pond; there is a pond there. Q. What is in the pond? A. There is water and B. S. in there. * * * Q. This salt water, slush and stuff that goes through pasture and down through the hay land, where does it come from? A. All that I saw came from the Curry farm. * * * Q. Is there any oil or slush or refuse running from these flow tanks down in the wheat field? The ones up a quarter of a mile north of the hay

land? (We think this refers to tanks on Moore farm.) A. I didn't notice to amount to anything. Q. If there is any, it doesn't go clear down to the mow land? A. No, sir; it wouldn't run into the mow land. * * *"

None of these witnesses testified that after November, 1919, and during the year 1920 any salt water, oil, or B. S. from the Duluth-Oklahoma Company flowed down the ravine on the meadow, where the water and oil flowed that came from the Curry land.

The difference between the case at bar and the case of Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 Pac. 906, is that in the instant case the evidence upon behalf of plaintiff's witnesses disclosed the damages to a certain portion of the farm were all caused from the oil and salt water that came from the Curry land, and could be separated from damages caused by the tenant, if any, while in the case of Walters v. Prairie Oil Company it could not. Under this state of facts, the court did not err in overruling a demurrer to the evidence and refusing to direct a verdict for the defendant. The court gave the instruction requested by the defendant, which properly submitted the question to the jury.

It is next contended that the court erred in submitting to the jury the question of damages in connection with plaintiff's water well and plaintiff's eastern tank or pond, for the reason the settlement of case No. 6280 precluded and estopped the plaintiff from recovering any damages caused to said tank and water well, and for the further reason the plaintiff failed to show that plaintiff sustained any damages whatsoever. We think there was no error in giving this instruction. The evidence was to the effect that the settlement of the former case was for damages occurring prior to the 6th day of November, 1919. In regard to whether any damages accrued by reason of the salt water and B. S. running into the well and pond thereafter, there is evidence that the windmill was standing, and there was a small hole in the pond, and the same was never repaired, because the salt water from defendant's lease ran down and across this pond, and the plaintiff was unable to use the pond by reason of the salt water. It is contended the plaintiff did not have the pond repaired, so therefore he could not recover damages by reason of the salt water and B. S. running into the pond and well. We think there is no merit in this contention. This was a question solely for the jury. There was evidence that the salt water from the Curry lease made the water in the well salty and ran from the pond and cattle or stock would not drink salt

water. We think there was no prejudicial error in submitting this question of damages to the jury.

These are the only two assignments of error argued. An examination of the record disclosed there was sufficient evidence to submit the case to the jury, and the instructions fairly submitted said issues to the jury.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.