[Civ. No. 7873. Second Appellate District, Division Two.—June 30, 1933.]

MARIE L. HIRSCH, Appellant, v. MAURICE D'AUTRE-MONT et al., Defendants; FOSTER WORD, Respondent.

Mulroney, Murphy & Doherty and William Hinckle for Appellant.

Joe Crider, Jr., for Respondent.

ARCHBALD, J., *pro tem.*—Plaintiff, a guest passenger in an automobile driven by defendant, brought suit for injuries alleged to have been caused by the gross negligence, recklessness and intoxication of defendant. A motion for directed verdict was denied and the jury returned a verdict in favor of plaintiff. Prior to the entry of judgment on said verdict defendant moved for a judgment notwithstanding such verdict, which motion was granted. From the judgment thereupon entered in favor of defendant, plaintiff has appealed.

In granting the motion above mentioned the court ruled that plaintiff was guilty of contributory negligence as a matter of law. Appellant contends that it was a case for the jury and that the court erred in so ruling. If the

defendant's motion for a directed verdict should have been granted, the court properly rendered judgment on defendant's motion, notwithstanding the verdict in plaintiff's favor; but otherwise not. The right of a court to direct a verdict is, "with regard to the condition of the evidence, absolutely the same as the right of a court to grant a nonsuit". (*Perera* v. *International Exposition Co.*, 179 Cal. 63, 64 [175 Pac. 454, 455].) "It [the court] may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff." (*Estate of Caspar*, 172 Cal. 147, 150 [155 Pac. 631, 632].) We are of the opinion also that even where there is no conflict in the evidence, if reasonably minded men may draw different conclusions therefrom it is still a matter for the jury to determine whether or not under such undisputed facts the conclusion should be drawn that plaintiff acted as an ordinarily prudent person would have acted under the same circumstances, or otherwise.

With these rules in mind we turn to the facts in the case. On September 28, 1929, between 8:30 and 9 o'clock P. M., plaintiff, together with her brother and his wife, visited the home of defendant Word's sister, Mrs. D'Autremont, at which Word resided. A late lunch was served, being preceded, however, by the service of a glass of "home brew" beer to each of the members of the party. The glasses were about five inches high, were poured full and the beer "had a kick in it". The lunch consisted of "rye bread, salami and beer", it being testified that each drank a second glass of the beverage with the lunch. During the repast a telephone call was received from Santa Ana, and those present were invited to visit the lady calling at Santa Ana. The invitation was accepted by Mrs. D'Autremont, defendant Word and the plaintiff. Word went to a near-by drugstore and purchased several bottles of alcohol. He was accompanied by plaintiff, who testified, however, that she did not know what Word had purchased until later. After they returned to the home Word took a bottle

of alcohol out of the package, asked if those present "would like a highball" and proceeded to mix the alcohol with "Pomo" (grapefruit juice) and gave each a glass. The evidence does not show that plaintiff saw Word drink more than we have stated, but the latter's undisputed testimony shows that he consumed several more drinks before leaving for Santa Ana. Shortly after 11 o'clock plaintiff, Mrs. D'Autremont and Word left for Santa Ana, Word driving. Soon thereafter, however, they stopped at a store, where Word purchased two bottles of ginger ale. Arriving outside the city limits of Los Angeles, Word again stopped the car, poured out about half the contents of one of the ginger ale bottles and filed it with alcohol. Miss Hirsch, the plaintiff, testified that she declined a proffered drink of this mixture but that Word and his sister each took one; that they then continued on their journey, her two companions consuming the contents of the bottle while driving two or three miles. Word then, without getting out of the car, mixed another bottle, half alcohol and half ginger ale, which was also consumed before they reached Anaheim. At Anaheim Word stopped at a store and purchased six bottles of ginger ale, which he put in the car. Shortly after they started again they stopped at a railroad crossing to let a "long freight train" pass. This was on a "detour from the main highway". On this detour plaintiff looked at the speedometer and saw that they were traveling fifty miles an hour, whereupon she said, addressing Word, "Foster, why do you go so fast; what is your rush?" to which the latter replied, "That isn't fast". About five or six seconds thereafter the detour on Vermont Avenue ended in Placentia Avenue, and in trying to negotiate the turn into the latter thoroughfare the car upset, killing Mrs. D'Autremont and seriously injuring plaintiff.

No drinking was done after the party left Anaheim. Plaintiff frankly testified that at the time she spoke to Word he was "under the influence of liquor". Asked as to what she based such statement on, she said that "if he hadn't been under the influence of intoxicating liquor he wouldn't have been driving at that rate of speed on a strange road, and I would base it on the fact of the amount of liquor he drank, that I saw him drinking myself". Plaintiff further testified that before they left Los Angeles Word appeared to be

sober and showed no evidence of having been drinking; that he had been doing fifty miles an hour before they were stopped by the freight train; that Word was intoxicated "all the way along when he was drinking", and that she considered the ride dangerous under the circumstances of speed and the drinking.

The evidence is conflicting as to whether Word was or was not under the influence of liquor when the party left Los Angeles and as to whether or not such fact was known to plaintiff, and the question whether or not she was guilty of contributory negligence in commencing the ride to Santa Ana was clearly for the jury. We are also of the opinion that the question as to whether or not plaintiff should have left the car when it stopped at the railroad crossing to let the freight train pass, considering that it was among orange groves and in the middle of the night, even though she then knew that the driver was under the influence of intoxicating liquor, is one upon which reasonable men might well differ and was in consequence one for the jury to determine. Under the testimony of plaintiff, however, all the drinking was done before they reached Anaheim, and under her evidence she knew that Word was at that time under the influence of liquor. In the light of these circumstances we fail to see how reasonable men could differ upon the proposition that ordinary care required, when the car stopped in Anaheim and Word, the driver, entered an open and lighted store to buy more ginger ale, that she should take steps to protect herself from danger that would then appear to be inevitable, by leaving the car or taking some steps to prevent an intoxicated person from operating it further. The accident occurred a few miles, at most, beyond this point, and it was testified that the point of the accident was within two or three miles of their destination. Furthermore, it is evident that the party whom they were to visit had a telephone, as she had previously called the house in Los Angeles from which the three had started.

Appellant urges that by reason of the disputable presumption "that a person takes ordinary care of his own concerns" (sec. 1963 (4) Code Civ. Proc.), a presumption exists that she exercised ordinary care, which is evidence of sufficient strength to make contributory negligence a ques-

tion of fact for the jury. Counsel cites and quotes from the case of *Smellie* v. *Southern Pac. Co.*, decided by the Supreme Court of this state and reported in 287 Pacific Reporter at page 343. In that case the decedent was a guest of the defendant Ireland, with whom he was riding. They were halted at defendant Southern Pacific Company's tracks by a passing freight train. When they later started across the tracks, after the freight train had passed, they were struck by a passenger train coming from the direction in which the freight train was proceeding, and which passenger train was obscured from the view of defendant Ireland and decedent by the freight train until it was right upon them. Ireland was examined by plaintiff under section 2055 of the Code of Civil Procedure, and stated during such examination that both he and decedent looked before starting the car after the freight train had passed, and did not see the approaching passenger train; that decedent said, "It's all clear; let's go." Such testimony stood uncontradicted by any witness. At the close of plaintiff's case a motion by defendants for directed verdicts was made and granted. It was contended there, as here, that the presumption mentioned created a conflict in the evidence which the jury had to determine. To this respondents answered that such testimony was overcome and dispelled as a matter of law by Ireland's testimony. The Supreme Court held that such presumption was not dispelled by the testimony of an adverse witness examined under the section above cited. A rehearing was thereafter granted and an opinion was handed down thereon which is reported in 212 Cal., at page 540 [299 Pac. 529]. In this latter opinion the court draws a distinction between the effect of evidence contradicting the presumption, given by the party relying on such presumption, and evidence given by the party against whom the presumption is invoked. The court says (p. 553): "It is argued by the defendants that since the statute (sec. 1963, Code Civ. Proc.), before enumerating the disputable presumptions, declares that said presumptions 'are satisfactory if uncontradicted' and that they 'may be controverted by other evidence', it must follow that if they are contradicted or controverted they fade out and disappear from the case. As has been seen, *they do disappear when contradicted or*

*controverted by the evidence of the party relying upon them*, with the qualification stated in the Mar Shee case, but it is not correct to say that under the code section and the effect given to it by the court they vanish from the case as a matter of law *when contradicted or controverted by the party against whom they are invoked.*" (Italics ours.)

The facts we have hereinbefore mentioned as showing contributory negligence on the part of plaintiff are established by the uncontradicted evidence of plaintiff, "under circumstances which afford no indication that the testimony is the product of mistake or inadvertence", and being "wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case". (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 9 [210 Pac. 269, 273].)

Judgment affirmed.

Works, P. J., and Stephens, J., concurred.