No. 31,535

FLOYD KOSTER, *Appellant*, v. M. B. MATSON, *Appellee.*

(30 P. 2d 107.)

Opinion filed March 10, 1934.

*W. T. Roche* and *C. Vincent Jones,* both of Clay Center, for the appellant.

*F. C. Norton, Harold L. Smither,* both of Salina, and *W. M. Beall,* of Clay Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one against an automobile driver for damages for personal injury sustained by plaintiff in an accident caused by the driver's attempt to round a corner or curve in a highway at high speed. Plaintiff was the guest of the driver. Plaintiff recovered a verdict for $100. The district court set aside the verdict and rendered judgment for defendant on special findings of fact. Plaintiff appeals. This court obtains jurisdiction because plaintiff claimed damages in excess of $100, and contends the verdict was for an insufficient amount.

The accident occurred in Nebraska, at a point about half a mile south of Courtland, Neb. The automobile was proceeding southward. The petition alleged defendant was driving at a rate of fifty or sixty miles per hour, and came to the corner or curve at such speed the automobile turned over several times. The answer alleged plaintiff was guilty of contributory negligence.

Plaintiff testified he had previously been over the same point in the road with defendant at least three times, and testified as follows:

"There are plenty of signs at the corner (referring to the corner where the accident occurred). One of the signs says it is 300 feet from the corner. This sign is north of the corner.

"Q. Now, did you say anything whatever to Mr. Matson with reference to his speed after you left Courtland and before the accident? A. No. There was nothing said after we left Courtland, not a word that I know of.

"Q. As you were going down that half mile did you at that time see this sign 300 feet from the corner? A. No, I didn't see that sign.

"Q. You didn't see it? A. No.

"Q. Did you see that other sign where there was a bar across and it showed a railroad crossing? Did you see that sign? A. No.

"Q. Were the lights of Mr. Matson's car shining out over the road and out over those signs? A. He had good lights.

"Q. He had good lights? A. Yes.

"Q. And could you have seen that sign at the side of the road? A. I expect I could have if I had been looking.

"Q. Could you have seen this railroad crossing sign there at the side of the road? A. I don't recall whether there is a railroad sign or not.

"Q. There is a railroad crossing right there immediately after the turn, is there not? A. Yes.

"Q. And could you have seen a railroad sign there if you had looked? A. Yes, I expect I could have seen that.

"Q. Mr. Koster, would you tell the jury just what you did, or what you were doing, from the time you left Courtland until the time of the accident? A. From the time we left Courtland until the time of the accident was a very short time, and as near as I can remember I was sitting there, and there was not a word said after we spoke about the croquet game.

"Q. What were you looking at? A. I don't know as I was looking at anything.

"Q. You do not know, then, what happened between those points? A. There wasn't anything much. Not a conversation or anything like that in my mind."

The special findings of the jury follow:

"1. Was there a warning sign located on the west side of the road south of Courtland, Neb., approximately 300 feet north of the corner indicating a turn to the right in the highway? A. Yes.

"2. If you answer question 1 in the affirmative, could the plaintiff have seen such warning sign had he kept a lookout? A. Yes.

"3. As the automobile approached the corner south of Courtland, Neb., could the plaintiff have seen such warning sign in time to have warned the defendant of such corner? A. Yes.

"4. If you answer question 3 in the negative, what, if anything, prevented the plaintiff from seeing the warning sign in time to have warned the defendant? A.

"5. Did the plaintiff protest or remonstrate to the defendant as to the speed and manner in which he was driving the car just prior to the accident and after leaving Courtland, Neb.? A. No.

"6. If you should find that the plaintiff did not see the warning sign, what do you find prevented him from seeing it? A. Mind preoccupied.

"7. Did the plaintiff, Floyd Koster, warn the defendant of the fact that they were approaching a sharp turn in the road in time to avoid the accident? A. No.

"8. If you answer question 7 in the negative, what, if anything, prevented him from seeing the corner and warning the defendant in time to avoid the accident? A. Mind preoccupied.

"9. Was the plaintiff, Floyd Koster, guilty of any negligence directly contributing to his injuries? A. No.

"10. As the automobile approached the corner where the accident occurred, did Floyd Koster, the plaintiff, do or say anything to prevent the accident? A. No.

"11. If the plaintiff, Floyd Koster, had kept a lookout and seen the warning sign, could he have warned the defendant in time to have prevented the accident? A. Yes.

"12. Did the plaintiff, Floyd Koster, do or say anything as they were traveling in said automobile from Courtland south to said corner where the accident happened to detract the attention of the plaintiff from the road and warning sign? A. No.

"13. If you answer question 12 in the affirmative, what do you find the plaintiff did or said to detract the defendant's attention from the road and warning sign? A.

"14. Did the defendant see the warning sign or the corner in time to avoid the accident? A. No.

"15. If you answer question 14 in the negative, what prevented him from seeing it? A. Mind preoccupied."

All facts not specially found were found against defendant by the general verdict. The 14th and 15th special findings show that, so far as exercise of mind was concerned, there might as well have been a dummy instead of defendant sitting in the driver's seat while the car hurtled to certain disaster at the sharp curve; and in this appeal defendant does not contest the fact that the evidence warranted the jury in finding him guilty of gross negligence.

Since the accident occurred in Nebraska, the liability of defendant is to be determined by the law of that state, and the petition pleaded the following Nebraska statute:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, but shall not be construed to apply to or include

any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser." (C. S. Neb. 1933 Supp. § 39-1129.)

The briefs do not advise the court with respect to interpretation of the statute by the Nebraska court. On investigation the court discovers the following:

"The term 'gross negligence' has received the attention of many courts, with conflicting views as to its proper definition. The courts of some of the states appear to hold that, to constitute gross negligence, there must have been an intentional failure to perform a manifest duty, or the injury must have been inflicted intentionally, or in wanton disregard of the rights of others. Other courts have defined it less drastically.

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature." (*Morris v. Erskine,* 124 Neb. 754, 755 [April, 1933].)

In the case of *Gilbert v. Bryant,* 251 N. W. 823 (Dec. 1933), the Nebraska court adhered to the decision in the Morris case, quoted the foregoing from the opinion in the Morris case, and quoted the following from the opinion in the case of *Shaw v. Moore,* 104 Vermont, 259:

" 'The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.' " (251 N. W. 825.)

The result is the statute does not go outside the field of negligence. The findings of the jury disclose plaintiff was guilty of contributory negligence, and the court finds no decision of the Nebraska court dealing with the subject of contributory negligence of the guest as a defense to the guest's action under the statute. The terms slight, ordinary, and gross negligence, are common-law terms in those states which recognize degrees of negligence, as the Nebraska statute does, and were formerly common-law terms in this state. The petition alleged the common law of Nebraska is the same as the common law of Kansas. It follows that, accepting the allegation of the petition and accepting the Nebraska court's definition of gross negligence, this court may decide whether the findings of fact preclude recovery by the guest under the common law of this

state, without instituting an investigation of the common law of Nebraska.

The common law of this state no longer recognizes division of negligence into degrees, because in all situations precaution must be appropriate to risk, which is due care, nothing more and nothing less. (*Railway Co. v. Walters*, 78 Kan. 39, 96 Pac. 346.) Contributory negligence is a defense to an action based on negligence.

In this state, and apparently in Nebraska, reckless or wanton conduct differs not in degree but in kind from negligent conduct, and such a thing as wanton "negligence" cannot exist. If the conduct be wanton, it is not negligent. If it be negligent, it is not wanton. Reckless or wanton conduct also differs from intentional conduct, because intent to injure is not present. However, in this state, for the practical purpose of an action for damages, recklessness or wantonness puts the wrongdoer in the same class with a willful wrongdoer.

"To constitute willful negligence there must be a design, purpose or intent to do wrong or to cause the injury. True, the courts and text-writers quite generally agree that recklessness amounting to an utter disregard of consequences will be held to supply the place of specific intent. (Citations.) And a reckless indifference to or disregard of the natural or probable consequences of doing or omitting to do an act, which is generally termed wanton negligence, carries with it the same liability as an injury inflicted by willfulness." (*Railway Co. v. Lacy*, 78 Kan. 622, 629, 97 Pac. 1025.)

The foregoing distinctions were made in the opinion in the case of *Railway Co. v. Baker*, 79 Kan. 183, 98 Pac. 804, and it was there held that one who negligently put himself in a position of peril on a railway track was not barred from recovery for being run down by a train which was recklessly or wantonly operated. The same distinctions had been made in the opinion in the case of *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, 18 Pac. 730, in which it was said the fact that one has carelessly put himself in a place of danger is never an excuse for another recklessly or wantonly injuring him. Contributory negligence has no application to harms intentionally inflicted.

While the common law of this state recognized degrees of negligence, gross negligence consisted, as it does under the Nebraska statute, in failure to exercise slight care. While there were decisions that if defendant's negligence were gross and plaintiff's negligence were slight, plaintiff could recover, there was no decision that plaintiff could recover against a grossly negligent defendant if plaintiff were guilty of ordinary negligence contributing to his in-

jury, ordinary negligence meaning want of the care and diligence an ordinarily prudent person would exercise under the circumstances. On the other hand, in the case of *K. P. Rly. Co. v. Pointer,* 14 Kan. 37 (1874), it was said in the opinion per Brewer, J.:

"Where the triple distinctions of slight, ordinary, and gross negligence are recognized, as in this state, ordinary negligence on the part of the plaintiff will, except, perhaps, in the case of wanton and willful injury, defeat a recovery." (p. 50.)

In the case of *U. P. Rly. Co. v. Adams,* 33 Kan. 427 (1885), 6 Pac. 529, it was said in the opinion by then Justice, now Chief Justice, Johnston:

"It is now well settled in this state and elsewhere in cases where the plaintiff seeks to recover for injuries on the ground of defendant's negligence, that if the ordinary negligence of the plaintiff directly or approximately contributed to his injury, he cannot recover unless the injury was intentionally and wantonly caused by the defendant." (p. 429.)

In this instance the petition counted on gross negligence, and the result is that, under the decisions of this court before the doctrine of degrees of negligence was discarded, contributory negligence on the part of plaintiff would bar recovery.

In the course of what we call progress, the motor vehicle appeared, was perfected, and its use became universal. Complaisant hosts invited or permitted guests to ride. Accidents occasioned by faulty driving occurred. Like Satan, the automobile damage suit industry came also. Also came insurance, leading to lawsuits between husband and wife, father and daughter, and mother and daughter. So it became necessary to adapt the law to the conditions created by the radical change in method of travel and transportation.

In dealing with the new problems this court has stated some very definite rules relating to duty of a guest to protect himself against negligence of his host under varying circumstances. The case of *Sharp v. Sproat,* 111 Kan. 735, 208 Pac. 613, dealt with the specific peril of speed, a rate of forty-five to fifty miles per hour then considered very high. The syllabus reads:

"An invited guest riding in an automobile driven at an excessive and dangerous speed is required to exercise such care as is reasonable and practical to avoid injury to himself, and if he fails to warn the driver, remonstrate with him, or demand that the automobile be stopped so that he may leave it, or take any precaution for his own protection when there is time and opportunity to do so, no recovery can be had for injury sustained by him through the negligent operation of the car." (¶ 1.)

The opinion reviewed authorities, and continued as follows:

"These authorities show that a guest or invitee riding in an automobile with a reckless driver is required to exercise reasonable care for his own safety and that if he fails to exercise such care to avoid injury to himself he cannot recover. . . . He certainly is required to do whatever is reasonably necessary to avoid injury to himself. If he had time and opportunity to do so he could have warned the driver, could have protested against the excessive speed or have asked the driver to stop and allow him to leave the automobile. Whether a warning protest or request would have been heeded by the defendant is questioned, but whatever the effect would have been, as the danger was obvious, it was the duty of Sharp at least to remonstrate against the dangerous speed or insist that he be allowed to leave the car if there was time to do so after the danger became apparent. In *White v. Portland Gas & Coke Co.,* 84 Ore. 643, the court, while stating that a rule applying to every case of this kind could not be laid down, said: 'It is plain, however, that an invited guest is not to be supine and inert as mere freight. Accepting the hospitality of his friend does not excuse him from the duty of acting for his own safety as a reasonably prudent person would under like conditions.' (p. 651.)" (p. 739.)

The Sharp case was approved and followed in *Naglo v. Jones,* 115 Kan. 140, 222 Pac. 116, in which the speed was in excess of fifty miles per hour. The syllabus reads:

"An invitee riding in an automobile driven by the owner at an obviously dangerous speed must exercise ordinary care for his own safety, and if he fails to warn the driver, remonstrate with him or demand that he be given an opportunity to leave the car, and does not take any precaution for his own safety, cannot recover for the negligent operation of the car by the driver." (¶ 1.)

The principle upon which these decisions, involving peril of high speed, was based, has been applied in other cases involving other perils and is undoubtedly sound.

A person soliciting permission or accepting an invitation to ride as "guest" may assume the host will drive with due care. Suppose the host gives such attention to the speed at which he is driving that he is guilty of slight negligence. Instead of driving with more care, he increases speed until he becomes guilty of ordinary negligence. He then increases speed until he is guilty of gross negligence. As the rate of speed increases, danger increases, and need of the guest to take measures for his own safety becomes more and more imperative. If he does nothing, his negligence is of the same grade as that of the driver's negligence, and he cannot recover.

Some light is thrown on the subject of duty of a guest to protect himself against negligence of his host by the recent decision of the Nebraska court in the case of *Murphy v. Shibiya,* 250 N. W. 746

(Nov., 1933). The decision was rendered under the common law of Nebraska. A husband was driving his Ford car at night, with his wife as a guest. A collision occurred with a Buick car standing on the pavement without lights. The wife sued the owner of the Buick. The opinion reads:

"The negligence of a husband while driving his automobile with his wife as his guest may not be imputable to her, but she may be responsible for the consequences of her own negligence, if she fails to warn him of known approaching danger and to protest against his recklessness. . . . The evidential facts and circumstances outlined were sufficient to sustain a finding that the husband of plaintiff drove his car downhill so fast at night on a slippery pavement, when snow was falling, that he could not stop, within the area lighted by his lamps, in time to avoid a collision with the car in front of him, and that his wife was guilty of gross negligence in failing to warn him of the obvious danger and in failing to protest against his recklessness—the proximate cause of her injuries." (p. 747.)

There is another approach to solution of the host-guest problem which leads to the same result.

The host provides and drives the car, and the guest provides the liquor; or the guest urges the host "to step on it." The inevitable occurs. The guest may not recover, because he was a participant in creation of the peril, and this is true in case of willful, reckless or wanton misconduct. (Harper on Torts, § 151.)

Suppose the guest does not encourage the host to drive at dangerous speed, but he is willing the host should do so, or acquiesces, or tacitly assents by remaining silent. In the opinion in the case of *Naglo v. Jones*, 115 Kan. 140, 222 Pac. 116, referred to above, it was said:

"If he sits silent and permits the driver to rush recklessly on at a dangerous rate of speed, knowing the danger, and fails to protest or remonstrate, he takes the chances of injury . . ." (p. 142.)

In his book on Torts, Professor Harper distinguishes this type of conduct, taking the chance of injury, from "assumption of risk," which has its own peculiar field of operation, designates the conduct "voluntary exposure to an unreasonable risk," and says:

"This type of conduct is actually a form of contributory negligence and, as such, bars the plaintiff from recovery against the negligent defendant who created the risk, . . . Thus, for example, a person voluntarily riding as a guest in an automobile on a dark night without lights, or with a driver whose incompetence is known, 'assumes' the unreasonable risks incident to such conduct and cannot recover from a negligent defendant. The plaintiff's negligence in knowingly exposing himself to such unreasonable dangers prevents his recovery." (§ 131.)

While in accord with the conclusion that the plaintiff may not recover, the Wisconsin court is not in accord with classification of the guest's acquiescence in the host's conduct as contributory negligence. In the opinion in the case of *Haines v. Duffy*, 206 Wis. 193, the court said:

"It is well settled that it was her duty to protest at an excessive or dangerous rate of speed. There is an increasing tendency to designate this failure to protest as contributory negligence. It is not strictly contributory negligence. . . . Where the invitation is to take an automobile ride, the guest is warranted in assuming that the host will not drive at a reckless or unlawful rate of speed. However, it may suit the pleasure of both the host and guest to drive at a high rate of speed. Where this results with the acquiescence of the guest, the guest is not permitted to recover from the host. This is not because the guest is, strictly speaking, guilty of contributory negligence, or any negligence, but rather because the guest has acquiesced in the conduct of the host, and it would be against reason and justice to permit a recovery against the host under such circumstances." (p. 196.)

Confusion of legal theories may be avoided if we deal realistically with the conduct of the guest voluntarily exposing himself to the unreasonable risk created by the host's conduct. When a host drives at a dangerous rate of speed he invades the guest's interest in his own safety. If the guest, with knowledge of the physical conditions created by the host's negligence and of such facts that a reasonable man should realize the danger, acquiesces in the invasion, he fails to act for the protection of his interest, and that failure satisfies the definition of contributory negligence. (Restatement, Torts, Tent. Draft No. 10, § 4, and comments *c, d* and *e.*)

It follows from what has been said that the guest cannot recover if he voluntarily exposes himself to danger created by his host's negligence, and this is true whether the negligence be ordinary or gross. This conclusion is strongly fortified by recent application of the underlying principle in a field of culpability in which use of the terms negligence and contributory negligence are not appropriate.

Statutes have been enacted relieving hosts from liability to guests for negligence, and leaving remedy for aggravated types of conduct only. A statute in Indiana forbids recovery by the guest—

"unless such accident shall have been intentional on the part of such owner or operator or caused by his reckless disregard of the rights of others." (Acts of the General Assembly of 1929, ch. 201.)

In the case of *Coconower v. Stoddard*, 182 N. E. 466, it was held that both negligence and contributory negligence were eliminated as elements for consideration in actions under the statute.

The state of Iowa has a statute forbidding recovery by a guest against his host—

"unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor, or because of the reckless operation by him of such motor vehicle." (Code, 1931, § 5026-b1.)

In the opinion in the case of *Siesseger v. Puth*, 213 Ia. 164, the court said:

"As recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading, proof or instruction of the court, in cases brought under this statute." (p. 182.)

However, in the case of *White v. McVicker*, 246 N. W. 385 (Jan., 1933), which was governed by the Iowa statute, the headnote reads:

"Where, after entering automobile, guest learns that driver is reckless, and acquiesces in recklessness, guest assumes risk of accident."

In the opinion it was said:

"One who knows of a danger arising from the act or omission of another and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure." (p. 386.)

In the state of Connecticut the guest statute provided that the host shall not be liable in case of accident—

"unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." (Pub. Acts 1927, ch. 308.)

In the case of *Bordonaro v. Senk*, 109 Conn. 428, the court quoted and interpreted the statute. It was held that since the word "heedlessness" added nothing to existing law, the statute should be regarded as if it read—

"or caused by his heedlessness and his reckless disregard of the rights of others." (Syl.)

Subsequently the court held contributory negligence of the guest was not a bar to an action based on the statute. In the case of *Freedman v. Hurwitz*, 116 Conn. 283 (1933), the syllabus reads:

"In the present case, *held* that the jury could reasonably have reached the conclusion that there was such a likelihood of the defendant falling asleep if he continued to drive the car, of which he should have been aware, that he was guilty of reckless misconduct under the guest statute.

"The fact that contributory negligence is not a defense to an action based upon reckless misconduct under the guest statute, does not in itself prevent the defense of the assumption of risk in a proper case."

In this instance plaintiff admitted he had previously been over the road with defendant, and that there were plenty of warnings of the sharp curve. The jury found specially plaintiff did not protest concerning rate of speed, and he kept no lookout. He could have seen the warning sign. Nothing prevented him from seeing the corner. He could have seen the warning sign in time to warn defendant, and nothing prevented him from seeing the corner and warning defendant in time to prevent the accident, except "mind preoccupied." Plaintiff was in fact as "supine and inert as mere freight." Plaintiff makes a mathematical calculation to show he had insufficient opportunity to warn defendant, but the jury has found to the contrary.

Plaintiff points to finding 9 that he was not guilty of contributory negligence. This finding was a general one, expressing the jury's conclusion from facts found in detail which established contributory negligence as a matter of law. In such cases the general finding may be ignored, and judgment may be entered in accordance with the specific findings. (*C. B. U. P. Rld. Co. v. Henigh, Adm'r*, 23 Kan. 347, 359; *A. T. & S. F. Rld. Co. v. Plunkett*, 25 Kan. 188, 198; *Railway Co. v. Laughlin*, 74 Kan. 567, 571, 87 Pac. 749; *Penrose v. Cooper*, 88 Kan. 210, 213, 128 Pac. 362.)

The judgment of the district court is affirmed.

HARVEY, J. (concurring specially): I concur in the judgment of affirmance. The principal question to be determined by this appeal is whether contributory negligence is a defense in an action for personal injuries to a guest in a motor vehicle under the Nebraska statute limiting the liability of the owner or operator of such vehicle to that arising from his gross negligence. Prior to the passage of the statute (C. S. Neb. 1931 Supp. 39-1129), quoted in the opinion, the Nebraska courts did not recognize degrees of negligence, nor comparative negligence, and what we call contributory negligence was a defense in all actions for damages on account of negligence. In *Village of Culbertson v. Holliday*, 50 Neb. 229, 69 N. W. 853, it was held:

"The doctrine of comparative negligence is not in force in this state. Our courts recognize no degrees of negligence. The rule is that if a person himself, in the exercise of ordinary care, is injured through the negligence of another, he may recover; but if his own negligence contributed to or was the proximate cause of the injury he cannot recover." (Syl. ¶ 8.)

When degrees of negligence are considered, three are recognized:

slight negligence, ordinary negligence, and gross negligence. All of these were treated as negligence under the meaning of that term as used in the case above cited. The statute above referred to used the term "gross negligence" as a degree of negligence (*Morris v. Erskine*, 124 Neb. 754, 755, 248 N. W. 96). In doing so it necessarily relieved the owner or operator of a motor vehicle from liability to his guest for injuries resulting from his slight or ordinary negligence. It does not purport to take away from him the defense of contributory negligence which he had to all actions for negligence before the statute was enacted. The obvious purpose of the statute was to relieve him from certain liability, not to remove defenses then available to him. The result necessarily is that what we speak of as contributory negligence remained as a defense in an action for gross negligence under the statute.

Another reason for affirmance is that the facts found by the jury in answer to the special questions in this case do not show gross negligence of defendant as distinct from ordinary negligence (compare *Gilbert v. Bryant*, 251 N. W. 823 [Neb.]). The statute in question relieved the operator of the motor vehicle from liability for ordinary negligence, hence, there was no liability.