Argued February 9; affirmed April 6, 1937

# LAYMAN *v.* HEARD

(66 P. (2d) 492)

*Arthur I. Moulton*, of Portland, for appellant.

*Zanley F. Galton* and *Elton Watkins*, both of Portland (Goldstein & Galton, of Portland, on the brief), for respondent.

ROSSMAN, J. The sole issue presented to this court is whether the circuit court erred when it set aside a judgment in favor of the defendant, based upon a directed verdict, and ordered a new trial. Specifically, the defendant contends that the evidence fails to indicate that (a) the defendant drove his car in a grossly negligent manner; and (b) the evidence conclusively proves that the plaintiff acquiesced in the manner in which the car was being operated by remaining in it.

In November of 1934 the plaintiff accepted the defendant's invitation to ride with him in his car from Portland, where the two men lived, to a ranch owned by the defendant's father, which was four miles off U. S. Highway No. 30 near Haines. The two planned to hunt elk in the vicinity of the ranch. In the car besides the two men was the sister of the defendant, Mrs. Frances Peterson. The distance from Portland to Haines is about 328 miles. A light trailer was attached to the car in which the men placed their bedding, baggage and hunting equipment. Although the plaintiff referred to the defendant's car as a new one, he described its front tires as "rather smooth" and the rear ones as not "real good." He was aware of their condition before the trip

was undertaken. Although the plaintiff swore that the defendant "was hitting along around 50 miles," the trip was made without incident.

November 12, after the two men had been hunting for seven days, they were ready to return home. The plaintiff placed in the trailer 200 pounds of elk meat and 60 pounds of luggage. At 7 a. m. on that day the three were seated in the car preparatory to starting home. The defendant was in the driver's seat, the plaintiff was beside him and Mrs. Peterson was in the rear seat. Just before the defendant started his car his father said to him, according to the plaintiff, "Now, Albert, it is going to be icy this morning; you had better be careful how you drive." We quote further from plaintiff's testimony: "He (defendant) says, 'Oh, I know how to drive,' and it seemed to kind of make him mad if you said anything to him about driving at all, and that's just—he never told his father goodbye after he spoke about driving." The plaintiff thought that the defendant was "kind of out of sorts."

After the car had reached the main highway little patches of ice and frost were encountered in low and shady places. According to the plaintiff and Mrs. Peterson, they passed over five or six icy places before they reached La Grande, 40 miles from the ranch. According to these two witnesses, their speed was 40 to 55 miles per hour. The plaintiff "figured that he (defendant) was going too fast for the conditions of the road," and the operation of the car made him feel that he was "kind of on an uneasy seat." Mrs. Peterson declared, "My heart was in my mouth." Both protested many times. The following is quoted from the plaintiff's testimony: "I told him, I says, 'Albert, we have all day to make Portland. What's the use of

driving so fast?' and he just seemed to drive faster. Finally, I said to him, 'Good Lord! man, slow up a little bit. You are going to have us in an accident,' but, he says, 'I am driving this car; I know how to handle it.' '' According to the plaintiff, his protests did not cause the defendant to reduce the speed. He believed that the defendant was "mad" or "peeved" over something that had occurred, and thought that possibly the admonitions that had been given to him just before they started accounted for his mental condition. Mrs. Peterson, after declaring, "I don't like to go too fast," and admitting that she didn't look at the speedometer, swore, "I told him (defendant) two or three times to not go so fast." She testified that her brother merely replied, "I am driving this car," and that he did not reduce his speed. She stated that the speed of the car, "was all that was wrong; he was driving too fast for such roads." The plaintiff likewise limited his objections to the factor of speed.

At La Grande the defendant drove the car to a filling station where the party remained for about 10 minutes. At that point, according to the plaintiff, he said to the defendant, "For Heaven's sakes, take it easy from here on. Don't try to make Portland on a record drive." He added, "I figured now that little peeve has worn off and he probably would be all right." Then the parties resumed their seats in the car and proceeded on their way to Portland. After they had traveled a distance of 3.2 miles the accident occurred which ultimately resulted in this action. West of La Grande the highway crosses the Blue mountains and at the place of the accident it is slightly upgrade and winding. According to the plaintiff, in this distance of 3.2 miles no ice was encountered except the spot which

we shall now mention. As the car was approaching this place at a speed of less than 50 miles per hour the plaintiff saw, 50 yards ahead in the shade of some trees, an ice-covered area and called out, "There's ice ahead. Look out!" Whether the defendant applied his brakes or not the plaintiff was unable to say, but when the car reached the ice it spun around and then hurtled down a sharp, rocky decline at the side of the road, resulting in the injury of the three occupants.

In addition to the above, the record indicates: that both the plaintiff and the defendant were about 50 years of age; that the plaintiff was an experienced driver; that he was familiar with the road over which he was traveling; that Highway No. 30 from Haines to the scene of the accident is paved, and that on the occasion in question it was dry. Mrs. Peterson described the defendant as "a pretty good driver, only he drives fast". For five years she had been in the plaintiff's employ.

■ Section 55-1209, Oregon Code 1930, which defines the circumstances under which a guest injured in an automobile accident may obtain a judgment against his host, employs the term "gross negligence". Numerous decisions of this court have attempted to define that term, the most recent of which is *Storm v. Thompson* 155 Or. 686 (64 P. (2d) 1309). In that decision, as well as in the other recent decision entitled *Hartley v. Berg*, 145 Or. 44 (25 P. (2d) 932), many definitions of the term "gross negligence" are reviewed. Without reviewing these definitions once more, we express the belief that a driver who operates a car, some of the tires of which are smooth, at a speed of 40 to 55 miles per hour, over a roadway upon which icy stretches are occasionally encountered, is driving in a manner which can

properly be deemed grossly negligent. Certainly such a conclusion is not at variance with *Rauch v. Stecklein*, 142 Or. 286 (20 P. (2d) 387), with which we remain entirely satisfied.

 The sole issue presented by this appeal, in our opinion, is whether the plaintiff was guilty of contributory negligence by returning to the car at La Grande. The defendant, in arguing in behalf of the affirmative of this issue, cites: *Hartley v. Berg*, 145 Or. 44 (25 P. (2d) 932); *White v. Portland Gas & Coke Co.*, 84 Or. 643 (165 P. 1005); *Blazer v. Freedman*, 165 Wash. 476 (5 P. (2d) 1031); *Hirsch v. D'Autremont*, 133 Cal. App. 106 (23 P. (2d) 1066); *Friedman v. Friedman*, 40 Ariz. 96 (9 P. (2d) 1015); *Curley v. Mahan*, 288 Mass. 369 (193 N. E. 34); *Sheehan v. Coffey*, 205 App. Div. 388 (200 N. Y. Sup. 55); *Koster v. Matson*, 139 Kan. 124 (30 P. (2d) 107).

The above decisions employ the familiar rule that a guest who is riding in an automobile must exercise reasonable care for his safety, and that if he fails to do so he cannot recover from his host. In *White v. Portland Gas & Coke Co.*, supra, this court said:

"The guest cannot abdicate his duty to use reasonable diligence in caring for himself. As said in Thompson v. Los Angeles etc. Ry. Co., 165 Cal. 748 134 Pac. 709, 712): 'It is of course true that a passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety.'

"If such passenger is aware that the operator is carelessly rushing into danger it may be incumbent upon him to take proper steps for his own safety. Whether the occupant has exercised reasonable care in the matter involved is usually a question for the jury. The standard of care is the conduct of a reasonably prudent person in such environments. The application

of this rule must be left to the judgment of the twelve triers of the fact. * * * It is plain, however, that an invited guest is not to be supine and inert as mere freight. Accepting the hospitality of his friend does not excuse him from the duty of acting for his own safety as a reasonably prudent person would under like conditions. Whether he does so or not must be decided by the twelve who declare the facts embodied in the verdict. * * *.''

In *Hartley v. Berg*, supra, and in *Mitchell v. Bruening*, 139 Or. 244 (9 P. (2d) 811), this court held that, under the circumstances revealed by the evidence, it could not say that the guest was guilty of contributory negligence. In each case the action of the circuit court in submitting the issue to the jury was approved.

In all of the rest of the above-cited decisions the plaintiff had failed to protest; or, as the reckless speed became greater and greater, he confined himself to a mild protest; or he remained in the car after he had observed the reckless operation and had had an opportunity to quit the venture; or he remained in the car after he had plainly seen that the driver was intoxicated and an opportunity had been afforded him to abandon the trip. In all of these instances the court held that no reasonable conclusion was possible except that the plaintiff had acquiesced in the reckless driving. In each instance, therefore, it held him guilty of contributory negligence. None of those decisions defined the guest's duty other than as stated in *White v. Portland Gas & Coke Co.*, supra; in fact, two of the decisions quoted from that decision. For a review of many additional decisions, see 65 A. L. R., annotation at page 956, and 61 A. L. R. annotation at page 1261. For a recent text dealing with the subject, see 5 Am. Jur., Automo-

biles, page 773, section 481. In *Koster v. Matson*, supra, although the jury's finding stated that the plaintiff was guilty of contributory negligence, the decision classified his conduct as neither contributory negligence nor assumed risk, but as "voluntary exposure to an unreasonable risk," employing the term used in section 131 of Harper on Torts. All of our previous decisions have employed the doctrine of contributory negligence.

In the present instance, the parties were 288 miles from Portland when the stop was made at La Grande. Had the plaintiff there abandoned the trip he would have been compelled to find some other means of transportation for himself, his 200 pounds of elk meat and his other belongings. He and the defendant had been friends for many years and had been upon hunting trips to the Haines ranch twice before. Apparently, each had confidence in the other's driving ability. The plaintiff attributed the defendant's unusual conduct to a "peeve" or to what he termed a condition of being "out of sorts". Such a condition is, of course, temporary. In the rear seat was the defendant's sister, for whose safety he certainly could be expected to have concern. Normally, the defendant was a good driver. In the drive from Portland to the ranch nothing untoward had happened, although "it rained all the way from Portland to La Grande on the day they made the trip". This statement is quoted from the defendant's brief. A speed of 50, or even of 55, miles per hour is not unusual in this day of needless rush. For the plaintiff to have left the car at La Grande would possibly have severed the friendship existing between the three people. Men are loath to do such a thing. Likewise, but few abandon one means of transportation and avail

themselves of another a long distance from home. Knowing men as we do, we must admit that all are not at their best at 7 o'clock in the morning. Not a few are "out of sorts" at that hour.

Having the above facts in mind, we can not say that it was the plaintiff's duty, as a matter of law, to have abandoned the car at La Grande. We believe that a conclusion is reasonably possible that he was justified in continuing the journey a little longer.

It follows from the above that the circuit court did not err when it ordered a new trial.

BEAN, C. J., and KELLY and BELT, JJ., concur.