**H. F. WILCOX OIL & GAS CO. et al. v. JOHNSON.**

No. 25452. April 13, 1937.

Rehearing Denied June 29, 1937.

Application for Leave to File Second Petition for Rehearing Denied Jan. 17, 1939.

Edward H. Chandler, Robert L. Imler, J. E. Thrift, J. C. Denton, Richard H. Wills, I. L. Lockewitz, Horace B. Clay, Harry Campbell, J. R. Ramsey, B. W. Griffith, W. P. Z. German, R. M. Turpin, Geo. Bowen, W. M. Fleetwood, Jr., A. G. Cochran, E. R. Hastings, Jas. A. Veasey, Forrest M. Darrough, W. F. Semple, G. P. Cantrell, and W. D. Abbott, for plaintiffs in error.

Johnson & Jones, for defendant in error.

RILEY, J. This action was commenced by defendant in error, herein referred to as plaintiff, against the H. F. Wilcox Oil & Gas Company and some 14 other oil companies to recover damages alleged to have been caused by the pollution of a stream running through plaintiff's land, and the overflow of said stream by which oil, salt water, and sediment, the polluting substances, were deposited upon plaintiff's land.

Plaintiff's petition alleged that said stream had been polluted by defendants since about 1922, or 1923, and alleged that the pollution of the stream itself had affected the value of the land. But the principal claim upon which plaintiff bases her cause of action was the overflow of the stream in October and November, 1931, and January, 1932, when said stream overflowed its banks and deposited great quantities of oil, salt water, base sediment, and other poisonous substances upon plaintiff's land, consisting of approximately 600 acres, causing the damage sued for.

Defendants answered by general denial, pleaded the statute of limitations, and alleged contributions to the injury by plaintiff in that she had leased some of her land several miles up the stream from the land here involved to an oil company, and that said oil company contributed to the pollution.

The case was tried to the court without a jury, resulting in findings of fact and conclusions of law favorable to plaintiff, with judgment accordingly, and defendants appeal.

The first question presented is that plaintiff's cause of action was barred by limitation in that she alleged in her petition that the pollution of the stream had continued over a long period of years, from 1922 or 1923, down to January, 1932, and that the value of her land had been affected thereby.

There was evidence to the effect that polluted water had been flowing down the stream for several years, and some evidence went in to the effect that the value of plaintiff's land had decreased somewhat as the result thereof. But plaintiff's main claim was based upon, and the principal part of the evidence went to, the effect of the overflow of the stream in October and November, 1931, and January, 1932, all within the two-year period next before the suit was commenced. Furthermore, at the trial, and the court so found, plaintiff renounced any claim for damage on account of the pollution of the stream itself as such.

The trial court found that no substantial damage had been done to plaintiff's land by the overflow of the stream until in October and November, 1931, and January, 1932, and that plaintiff did sustain damage by reason of the flood water pollutions deposited on the land during said months.

The judgment was based wholly upon said findings.

It appears that the pollution came from a large oil field, ten or twelve miles in length and from three to five miles wide, located up the stream from plaintiff's land, and within the watershed of said stream.

The identical question was before this court in the recent case of Pine v. Duncan, 179 Okla. 336, 65 P. (2d) 492. Therein it is said:

"The fact that the stream had been polluted for several years, and two of plaintiff's trees destroyed, did not cause the

damage complained of and does not prevent this action for permanent injury to the land within the statutory period caused by increased pollution. An action for damages to real property caused by pollution is not barred by the statute of limitations because oil and salt water have escaped into a stream running through plaintiffs' land for more than two years prior to the filing of the action, but the time within which such action may be brought dates from the time the injuries were received and the damages sustained."

In Commercial Drilling Co. v. Kennedy, 172 Okla. 475, 45 P. (2d) 534, it is held that:

"In an action for damages for permanent injury to real estate caused by continuing salt water pollution, the statute of limitations begins to run at the time it becomes obvious that a permanent injury has been suffered. However, in a case where the injury grows progressively greater due to a continuation of the tortious acts, the statute of limitations bars recovery only for the damages flowing exclusively from that portion of the permanent injury which was obvious more than two years prior to the commencement of the action."

In this state it is held that where a part of a tract of land is injured by the overflow of a stream polluted from oil field operations and judgment is recovered therefor, such judgment is a bar to a subsequent action for damage to the same land, but the judgment is not a bar to a subsequent action for damage to other parts of the same tract of land. Comar Oil Co. v. Hackney, 119 Okla. 285, 250 P. 93.

Had plaintiff in this case sued and obtained judgment for damages for pollution of the stream itself as such, because of the destruction of the usefulness of the stream as a source of water for her stock or other domestic purposes, under the above rule, such judgment would not be a bar to a subsequent action for damages caused by the destruction of the soil. Neither did the fact that she failed to bring action for the first injury until the statute of limitations had run bar the subsequent action for the recovery of damages to other parts of the land.

Defendants' plea of limitation is not well taken.

It is next contended that it was error for the trial court to predicate the judgment upon the judge's personal knowledge of the value of plaintiff's land, and upon so-called "judicial knowledge" of facts with reference thereto.

The record does not show that the judgment was based entirely upon the judge's personal knowledge of the value of plaintiff's land.

The findings of fact recite at length the testimony of the witnesses and the evidence upon which the findings were based. The record shows that before the trial commenced, the trial judge was requested to view the premises. The judge stated in his findings of fact that he was familiar with farm lands of the nature of plaintiff's, having bought and sold in that immediate section during the past 15 years, and "naturally takes judicial knowledge of the values of such lands as plaintiff owns." But concludes, "From the evidence and his own knowledge of farm values * * * this land had a cash value in 1931 of not less than $50 per acre."

The judgment is by no means based upon so-called judicial knowledge. It must be borne in mind that this case was by agreement tried before the court without a jury, so the trial judge was in the same position as to the facts involved as the jurors would have been had the trial been before a jury. No one could, with reason, contend that a juror in such circumstances should entirely discard any personal knowledge he might have had of the value of farm lands in arriving at the truth, especially so as here where the evidence is in conflict, and where there is a wide variance in the evidence and great differences in values between the estimate of several witnesses. In such circumstances the trial judge may, in connection with the evidence, properly call to his aid such personal knowledge as he may have. As to the words "judicial knowledge," it clearly refers to values of such lands as plaintiff owns. It is described as fertile, level, bottom land. Judicial knowledge is such as is common. It is common knowledge to all that bottom land is more valuable for crop raising than rough upland. Of this fact the court may properly take judicial notice. Therein the finding as to value is based upon the evidence and personal knowledge of the judge. Whether this personal knowledge of the particular land was acquired by personal inspection as requested or by personal knowledge previously acquired, does not appear. However, we think it was proper to make use of either or both.

Complaint is made of the admission in evidence of the estimate of one witness of the quantity of salt water escaping from the land leased by plaintiff.

The objection seems to have been that

the witness had not properly qualified to testify concerning such matters. The witness testified that he was well acquainted with the premises and had been since the time the oil field was opened. It was merely the estimate of a nonexpert witness. It was competent for what it was worth. If error, it was harmless in view of the stipulation of the parties' relative to the particular lease in question.

It is next contended that contribution by plaintiff to pollution of the stream precludes her from recovering.

This contention is based upon a stipulation entered into by the parties to the effect that the Phillips Oil Company operated a lease within the watershed of the stream and above the land alleged to have been damaged; that plaintiff had leased her interest in said land to the Phillips Oil Company; that salt water escaped from the wells on said land, and commingled with salt water escaping from the leasehold of defendants thereafter flowing into the stream which ran through the lands alleged to have been damaged; that the escape of salt water, etc., from the Phillips Company leasehold was occasioned by or through no negligence on the part of plaintiff or her lessees or tenants, and was without her consent or approval except as may be implied from the execution of the oil and gas lease by plaintiff.

Defendants rely upon the case of Northup v. Eakes, 72 Okla. 66, 178 P. 266, and the cases of Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906; Kay & Kiowa Oil Co. v. Moore, 96 Okla. 247, 221 P. 511, and Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P. (2d) 389, are also cited as indicating a belief that this court would probably extend the rule announced in the Walters Case so as to preclude the plaintiff from recovering by the mere fact that she leased her other land for oil and gas purposes and the lessee of these other lands permitted salt water and oil to escape from wells and flow upon the separate land of plaintiff.

The Walters Case holds that the plaintiff could not recover because plaintiff consented to and actively participated in the pollution of the stream by the plaintiff's own tenant, which pollution, together with that caused by the defendants, caused the damage. It has never been held by this court that the mere execution of an oil and gas lease of itself constituted consent to or acquiescence in acts of the lessee thereunder in permitting oil and salt water to escape from wells drilled under such lease.

The Walters Case, supra, does not so hold. The rule there announced has never been so extended.

Commercial Drilling Co. v. McKee, 162 Okla. 204, 19 P. (2d) 338, holds that a landowner is not precluded from recovery though his own lessee may contribute to the pollution, where the owner did not consent to the acts of his lessee, did not participate therein and protested against same. Pollution of the stream in this case was in violation of sections 4782 and 11580, O. S. 1931. When plaintiff leased her land for oil and gas, she had the right to presume that the lessee would not violate the law in the operation of any oil well which it might thereafter drill under the lease. The mere execution of an oil and gas lease of itself does not constitute consent for the lessee to pollute the streams flowing through the leased land, and certainly does not constitute consent for the pollution of streams running through other land owned by the lessee.

The next question presented is that the trial court erred in overruling defendants' motion for a new trial based upon alleged newly discovered evidence.

The evidence relied upon is an attempt to show that at the time of the trial of this case, July 17 to 19, 1933, the poor crop conditions on the land involved were due to dry hot weather, rather than the effect of salt water and oil; that after the trial and before the first of October, there had been abundant rainfall, and as a result thereof the land that year was producing and did produce abundant crops and luxurious growth of vegetation. Affidavits to that effect were filed in support of the motion. Numerous photographs were taken and attached to the motion tending somewhat to substantiate the affidavits. The affidavits were for the most part by the same witnesses who had testified at the trial and their testimony at the trial was to the effect that the crops growing on the land that year were in normal condition except for the effects of drouth and hot weather. Plaintiff filed counter affidavits, and by some of the same witnesses who had testified for plaintiff at the trial, whose testimony at the trial was to the effect that the poor condition of the crops was due to the effects of oil and salt water upon the land. Their affidavits are to the effect that the alleged statements made in the motion for new trial and affidavits in support thereof are not true; that the photographs do not fairly represent the condition of the crops and vegetation as a whole.

It is apparent that this is but a renewal of the battle between the witnesses on opposite sides and upon substantially the same question that had been tried to the court.

In all fairness to defendants it may be said that the photographs did show a decided improvement in crop conditions so far as the photographs went, but necessarily they showed but little of the surface of the 600 acres of land involved. Naturally the crops would be expected to improve in conditions under such circumstances, but it does not necessarily follow that the crops would not then have been in much better condition but for the effects of salt water and oil, admittedly deposited upon the land. But many photographs were introduced at the trial which the witnesses said showed crops in substantially normal conditions at that time. The trial court had before it all the evidence, and upon consideration of the motion based upon the alleged newly discovered evidence, and in substance found and held that the showing made was not sufficient to indicate a probable verdict or judgment contrary to that entered if the new trial was to be granted.

It is next contended that the judgment is not reasonably supported by the evidence.

To begin with it was stipulated that salt water and other refuse had escaped from the leasehold of defendants and commingled in the stream running through plaintiff's land, and during overflow periods had flowed over and across plaintiff's land.

The question then was whether the effect thereof was to injure plaintiff's land and decrease the market value thereof, and if so, to what extent. Upon this point the evidence is in decided conflict. Defendants contend that the evidence of plaintiff as to the effect of such damage is purely speculative, and that evidence of chemical analysis of the soil showed no injury.

It was admitted, however, by certain witnesses for defendants that there was some evidence of injury from oil. The witnesses for plaintiff, while not expert witnesses, were acquainted, so they said, with the effect of salt water, oil, and "Tretolite," when deposited upon farm land, and in their opinion the land of plaintiff was materially affected thereby and consequently decreased in value.

The question of the weight of the evidence was for the trial court, the same as for the jury where such cases are tried to a jury.

We cannot say that there was no evidence reasonably tending to support the findings and judgment of the trial court, or that the judgment is not supported by the evidence.

It is next contended that there is no foundation for the statement in the findings of the court that "plaintiff is claiming nothing on account of the pollution of the stream itself as such."

The contention is not sustained.

The record discloses that counsel for plaintiff at the trial specifically disclaimed any claim for damages based on that account.

The findings and judgment expressly eliminated that item of damage.

Finally, it is contended that plaintiff is not entitled to recover damages for injury to land purchased by her in 1930 and 1931.

The last tract of land acquired by plaintiff appears to have been on October 5, 1931.

The court found that the first damage to the land occurred from the floods of October and November, 1931, and January, 1932. The evidence was that the flood of October, 1931, was in the last days of the month, some three weeks after plaintiff acquired the last tract of land involved. She did not claim and was not awarded any damage to any of the land which was occasioned prior to the time she acquired it.

Defendants revert to the question mentioned before, viz., that because plaintiff did allege that the stream itself had been polluted since about 1922 or 1927, and that the value of her land was decreased thereby, her sole and only cause of action must necessarily have included such damage. We have held otherwise under the facts in this case.

There being no prejudicial error, the judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, WELCH, CORN, and HURST, JJ., concur. GIBSON, J., dissents. PHELPS, J., absent.