No. 33,881

JAMES L. DONELAN, *Appellant*, v. EARL WRIGHT, *Appellee*.

(81 P. 2d 50)

Opinion filed July 9, 1938.

*William S. Norris, Wint Smith, Homer B. Jenkins,* all of Salina, *James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton, R. E. Haggart,* all of Salina, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by a guest against his host for damages growing out of an automobile collision. Judgment was for defendant upon the answers to special questions. Plaintiff appeals.

The collision occurred in the early morning of November 26, 1936. Some young people, including the plaintiff and defendant, had spent, the evening at a place referred to in the record as the "Club Lido." This club is located a short distance off highway 40 and a few miles east of Salina. The plaintiff had gone there in his own automobile with two young men friends. Defendant had gone there in a Packard car owned by his grandmother. He was accompanied by a young lady to whom he was engaged to be married, and another young man. When these young people were ready to start home a short time after midnight it was discovered that the door of the car in which plaintiff came to the club was locked in such a manner

that his keys would not unlock it. After some conversation one of the young men who had come to the party with plaintiff drove to Salina after a tool with which to unlock the car. After a few minutes defendant invited plaintiff to ride home with him in his car. Plaintiff accepted this invitation. Defendant sat in the front seat and drove the car. His fiancée sat by him in the front seat. Three young men, including plaintiff, sat in the back seat. Defendant drove the car in a normal manner, and with the lights on, from where it was parked, 200 or 300 feet off the highway, to highway 40. When he reached the highway he turned west toward Salina and turned off his headlights. He drove at a rate of from forty to forty-five miles per hour.

The outcome of this case depends on what was said and done there by all the persons in the car, and since these facts were settled by the jury in answers to special questions they will be discussed later in this opinion.

The town of Solomon is located between the club and Salina. As the car approached Solomon the party met a truck coming from the west. Just behind this was a car coming from the west. This car pulled out into the traffic lane in which defendant was driving, to pass the truck. Defendant saw the car coming and turned on his lights, swerved to the right, and the car coming from the west pulled back behind the truck so that a collision was averted. This incident was noted by defendant and all his guests. After it occurred defendant again turned off his lights and the car driven by defendant passed through Solomon. About a mile west of Solomon the car driven by defendant collided with a car being driven from the west. Two young men in that car were killed. Defendant and all his guests were injured.

This action was brought by one of the guests.

The petition charged three acts of negligence against defendant—absence of lights, failing to keep a proper lookout, and driving on the wrong side of the road.

The answer was a general denial, and that plaintiff was guilty of contributory negligence.

The jury found that there was absence of lights and want of proper lookout, but found that defendant was on his own side of the road when the collision occurred.

At the close of the evidence for plaintiff, defendant demurred to it. This demurrer was overruled. The case was submitted to a

jury. This jury answered forty-six special questions and returned a general verdict for plaintiff. The defendant filed his motion to set aside certain of the answers to special questions, for a new trial and for judgment on the answers notwithstanding the general verdict.

The court sustained the motion of defendant for judgment on the answers to special questions and denied the motion to set aside answers except where they were inconsistent with the order for judgment. The motion for a new trial was withdrawn.

Both parties state here that the two questions in the case are: Was the conduct of defendant such as to make him guilty of gross and wanton negligence? (See G. S. 1935, 8-122b.) And was the plaintiff guilty of contributory negligence so as to bar his right to recover?

The plaintiff refers to the answers of the jury to questions 17 and 19. They are as follows:

"17. Do you find the defendant was guilty of gross and wanton negligence as defined in the instructions of the court, in driving of the car on this occasion? A. Yes.

"19. If you find the defendant was guilty of gross and wanton negligence, state fully the acts constituting such gross and wanton negligence. A. Driving without proper lights and disregarding plea of Margaret to turn lights on."

Plaintiff argues that the question of whether the defendant was guilty of gross and wanton negligence was for the jury, and that the above answers settle the issue in favor of the plaintiff. The trouble with that argument is that the answer to question No. 17 must be considered in connection with the answer to question No. 19 and to No. 24, where the jury found that the occupants of the car in which plaintiff and defendant were riding could see ahead of the car from 150 to 600 feet, also that part of the answer to question No. 41, where the jury found that defendant was not driving on the left-hand side of the road at the time of the collision. When we so consider these answers we find a story about as follows: Defendant drove his car down the right-hand side of the road without lights on a night when he could see ahead from 150 to 600 feet. The rate of speed was not asked the jury, but since there was testimony that it was forty-five miles an hour we will take that figure. Our question is, then, Did such conduct amount to wantonness or to gross and wanton negligence under the provisions of G. S. 1935, 8-122b?

This court first considered the statute in *Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573. In that case this court said:

"Of those matters which give rise to a civil action for damages, when an injury results therefrom, we recognize in our law negligence, meaning by that the lack of due care. We also have willful injury, as where one willfully strikes another, or willfully destroys property of another, or intentionally does any act with the purpose and intent of causing such injury. Among the activities of individuals are acts or omissions, which give rise to civil actions for damages where injuries result therefrom which are subject to more severe censure than negligence and yet which are something less than willful injury. The law applies to such acts the general term of wantonness." (p. 390.)

*Stout v. Gallemore*, supra, was discussed in *Sayre v. Malcom*, 139 Kan. 378, 31 P. 2d 8. There this court said:

"In *Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573, it was held the statute above quoted relieves the operator of an automobile from liability to his guest resulting from negligence, as that term is distinguished from wantonness. Cases are there cited distinguishing wantonness, as the term was used, from negligence, and pointing out that conduct properly characterized under these terms differs not in degree, but in kind, the one denoting lack of due care under the circumstances, the other denoting conscious or intentional misconduct from which injury to someone is likely to result and with a reckless disregard of such consequence." (p. 379.)

It is pointed out in the above that wantonness as used in the statute means conduct "denoting conscious or intentional misconduct from which injury to someone is likely to result, and with a reckless disregard of such consequence."

In *Aduddell v. Brighton*, 141 Kan. 617, 42 P. 2d 555, this court, in considering such an action, said:

"We see from these authorities that this court has consistently held that for the conduct of a defendant to constitute a basis for a cause of action under the statute it must show such a reckless disregard of consequences as to evince a willingness that some harmful result will flow therefrom." (p. 619.)

In *Cohee v. Hutson*, 143 Kan. 784, 57 P. 2d 35, this court, in considering such a case, said:

"Defendant's natural concern for his own safety, and for the safety of his own property, his truck, and his cattle, as well as all the other circumstances revealed by the record, precluded any assumption that he shifted his truck gears with reckless unconcern whether plaintiff might be injured thereby." (p. 788.)

The authorities will lead us to the conclusion that to constitute wantonness so as to permit recovery under G. S. 1935, 8-122b, the conduct must be such as to evince a willingness that harm might

result therefrom, or as to evince as reckless unconcern that plaintiff might be injured. When we apply that rule here we find that to hold defendant guilty of wanton conduct we would be compelled to say that he was willing to injure himself and his sweetheart and wreck his grandmother's automobile. We are unable to reach this conclusion. The incident at Solomon where the truck was met and defendant took proper measures to avoid a collision refutes such a conclusion.

We hold that the answers of the jury to the special questions finding specific facts show that defendant was guilty of nothing more than negligence. The answers to questions not in harmony with the conclusion were set aside by the trial court.

The above conclusion would require that the judgment be affirmed. However, we shall also consider the question of contributory negligence of plaintiff.

Was the plaintiff guilty of contributory negligence so as to bar his right to recover?

We shall refer to the answers made by the jury to the special questions that bear on the point of whether the plaintiff was guilty of contributory negligence. Some of the questions and answers were as follows:

"3. If you find that defendant switched off the lights of his car, as mentioned in the last preceding question, then did Margaret Geis, within the hearing of plaintiff, at once remonstrate with him and request him to turn on the lights? A. Yes.

"4. If you answer the last preceding question 'yes,' then did defendant answer with a laugh and say in effect that it was prettier driving without lights in the moonlight? A. Yes.

"5. Did plaintiff say, loud enough for defendant to hear, 'I wish to hell he would turn his lights on?' A. Yes.

"6. Did Norbert Schwartz say to plaintiff in effect that as Margaret Geis. was protesting against the defendant's driving without lights, that she would have more effect on defendant than any one else and that if any one could get him to turn them on, she could, and that it would be best to let her handle it? A. Yes.

"7. If you answer the last preceding question 'yes,' did the plaintiff acquiesce in Norbert's suggestion and agree that it would be best to let Margaret handle it? A. Yes.

"9. Did Margaret Geis continue her remonstrances with defendant until near the point of the collision? A. She protested up to Solomon.

"10. If you answer the last preceding question 'yes,' did plaintiff continue to observe her making the remonstrances until near the point of the collision? A. Yes, up to Solomon.

"11. When approaching the city of Solomon and meeting a truck and a car behind it commencing to pass the truck, did defendant suddenly swerve the car to the right and switch on his lights? A. Yes."

By these questions and answers the jury found that the young lady with defendant remonstrated with him when he turned off his lights. Defendant did not heed her request. Plaintiff said loud enough for defendant to hear, "I wish to hell he would turn his lights on." One of the young men in the back seat told plaintiff that the young lady with defendant had more influence with defendant than anyone, and it would be best to let her handle it; that plaintiff acquiesced in this suggestion of his companion. The next finding of the jury is of importance to us here. The jury found that the young lady remonstrated with defendant up to Solomon. Asked if plaintiff continued to observe her make protests until near the point of the collision the jury answered, "Yes, up to Solomon." This was about a mile from where the collision occurred.

The jury further answered questions as follows:

"27. Did the plaintiff make any protests to the defendant about driving the Packard car without headlights? A. Yes, indirectly through Margaret Geis. Refer to remarks made in answer to question No. 5.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"29. Did the plaintiff believe that there was danger of collision or injury on account of the manner in which defendant operated his automobile, and if so, during what period or periods did he so believe? A. Yes, during the time he was in the Packard car.

"30. Did any incident occur on the curve immediately east of Solomon which increased the plaintiff's apprehension of danger? A. Yes.

"31. If you answer question No. 30 'yes,' then state whether or not the plaintiff thereafter made any remonstrance or protest to the defendant as to the manner in which the defendant was operating his automobile, and if so, state when and where the plaintiff remonstrated and what he said and did. A. No.

"32. Did the plaintiff at any time or place on the trip between Club Lido and the place of collision ask or demand of the defendant that the defendant stop the automobile and let him out? A. No.

"33. If you answer question No. 32 'yes,' then state when and where such demand was made and what was said and done. A.

"34. Did any of the occupants of the defendant's car at any time or place on the trip from Club Lido to the time of the collision ask or demand of the defendant that the car be stopped and that any of the occupants be let out of the car? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"36. Did any occupant of the defendant car make any complaint or protest

to the defendant about the defendant driving without lights after the Packard left the city of Solomon?   A. No.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"44. Prior to the collision, did Margaret Geis, in the hearing of the plaintiff, repeatedly protest to the defendant his driving without lights and repeatedly urge him to turn on his lights?   A. Yes.

"45. Was the plaintiff justified in believing under the circumstances and in view of the relationship between Margaret Geis and the defendant, that Margaret Geis had more influence with defendant than he would have, and that if anyone could prevail on defendant to turn his lights on, Margaret Geis could?   A. Yes."

By these answers the jury found that the plaintiff protested by leaving the business of protesting to the young lady and by saying at the start of the trip that "I wish to hell he would turn his lights on."   In this connection we must note that the jury found by its answer to question No. 36 that no occupant of the car protested to defendant after the car left the city of Solomon.   Therefore, if plaintiff was depending on the young lady to make his protest the jury found by its answer to questions No. 10 and No. 36 that the person upon whom he was depending and whom he was watching all the time made no protest for over a mile prior to the accident.   The jury also found by its answers that plaintiff believed all the time he was in the car that there was danger of collision, that the incident at Solomon increased his apprehension of danger, that he made no protest or complaint as to the manner in which defendant was operating his automobile, and that neither he nor anybody else at any time asked that the car be stopped so that he could get out.

By its answer to question No. 44 the jury found that prior to the collision the young lady, in the hearing of the plaintiff, repeatedly protested to the defendant about his driving without lights, and urged him to turn on his lights.   We must consider this answer in connection with other answers to the effect that no protest was made at all after the car left Solomon, a mile away from the scene of the collision.

By its answer to question No. 45, the jury found that plaintiff was justified in believing that the young lady had more influence with the defendant than he had and that if anyone could prevail on defendant to turn on his lights it would be she.   It must be noted in considering this answer that the young lady did not protest after the car left Solomon, a mile away from the scene of the collision.

We will not answer the interesting question of whether plaintiff was entitled to rely on the young lady to make his protest for him.

The jury has found that they both rode a mile while defendant was driving his car down the road at night without lights and that they were both aware of the danger they were in all the time. Under such circumstances, can plaintiff recover, or did the jury by its answers convict him of such contributory negligence as to bar his recovery?

An early case involving this question was *Sharp v. Sproat*, 111 Kan. 735, 208 Pac. 613. There Sharp boarded the car during the journey. The defendant drove it at a rate of forty-five to fifty miles per hour. This was excessive and caused the car to turn over and Sharp was killed. He had ridden only a quarter of a mile in the car when the tragedy occurred. His parents recovered judgment in the trial court. On appeal this court held that a guest in an automobile is required to exercise reasonable care for his own safety and that if he fails to exercise such care he cannot recover. This court said:

"He certainly is required to do whatever is reasonably necessary to avoid injury to himself. If he had time and opportunity to do so he could have warned the driver, could have protested against the excessive speed or have asked the driver to stop and allow him to leave the automobile. Whether a warning protest or request would have been heeded by the defendant is questioned, but whatever the effect would have been, as the danger was obvious, it was the duty of Sharp at least to remonstrate against the dangerous speed or insist that he be allowed to leave the car if there was time to do so after the danger became apparent." (p. 739.)

In *Naglo v. Jones*, 115 Kan. 140, 222 Pac. 116, in a similar case this court said:

"If the driver runs his car at a reckless rate of speed and thus encounters an obvious danger it is the duty of the invitee, when the danger becomes apparent, to take precautions for his own safety. He must remonstrate and if necessary ask for an opportunity to leave the car. If he sits silent and permits the driver to rush recklessly on at a dangerous rate of speed, knowing the danger, and fails to protest or remonstrate, he takes the chances of injury and cannot recover for one which results from the manifest negligence of the driver." (p. 142.)

It should be noted that in the above case this court said "he must remonstrate and if necessary ask for an opportunity to leave the car." Here there is no contention that any of the guests asked for permission to leave the car at any time during the entire trip.

To the same effect is *Ferguson v. Lang*, 126 Kan. 273, 268 Pac. 117; also, *Shrewsbury v. Goodacre*, 135 Kan. 230, 10 P. 2d 1.

*Koster v. Matson,* 139 Kan. 124, 30 P. 2d 107, was a case where a guest sued his host for injuries incurred when the car in which he was riding turned over at a sharp turn. The cause of the car turning over was the failure of either the defendant or plaintiff to see a warning sign 300 feet from a sharp corner. This court held that plaintiff was guilty of contributory negligence. The court said:

"A person soliciting permission or accepting an invitation to ride as 'guest' may assume the host will drive with due care. Suppose the host gives such attention to the speed at which he is driving that he is guilty of slight negligence. Instead of driving with more care, he increases speed until he becomes guilty of ordinary negligence. He then increases speed until he is guilty of gross negligence. As the rate of speed increases, danger increases, and need of the guest to take measures for his own safety becomes more and more imperative. If he does nothing, his negligence is of the same grade as that of the driver's negligence, and he cannot recover." (p. 130.)

The case is of interest to us here because plaintiff in this case realized his danger every minute he was in the car with defendant.

Some authorities from other jurisdictions are cited by counsel, but the rule announced in the cases heretofore cited has been so closely followed by this court that the cases from other jurisdictions are not deemed important.

The judgment of the trial court is affirmed.