No. 35,836

W. D. CURTISS, *Appellee*, v. JOHN FAHLE and THE NATIONAL MUTUAL CASUALTY COMPANY, *Appellants*.

(139 P. 2d 827)

Opinion filed July 10, 1943.

*C. Glenn Morris,* of Topeka, argued the cause, and *William E. Scott,* of Kansas City, was on the briefs for the appellants.

*Walter B. Patterson,* of Fort Scott, argued the cause, and *Joseph Cohen,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for personal injuries resulting from a rear-end collision between a car in which plaintiff was riding and a truck. Plaintiff prevailed and defendants have appealed. Appellants are John Fahle, owner of the truck, which was operating as a common carrier of property under permit issued by the state corporation commission, and the National Mutual Casualty Company, a corporation which had issued to John Fahle a liability policy of insurance covering his operations as a common carrier of property. The policy was issued and filed with the state corporation commission pursuant to its rules and regulations.

Appellee has filed a motion to dismiss the appeal. We have examined and considered the motion but find nothing in it which justifies sustaining it.

Defendants have appealed from orders overruling their (1) demurrer to plaintiff's evidence, (2) motion to set aside certain findings of fact made by the jury, (3) motion for judgment on the special findings, and (4) motion for a new trial.

We shall next consider the ruling on the demurrer. It was interposed on the grounds the evidence disclosed (1) the proximate cause of the collision was the negligent operation of the car in which plaintiff was riding, (2) contributory negligence of the plaintiff in failing to exercise due care and caution for his own safety, and (3) the defendant truck driver was not guilty of negligence. In support of the last ground of the demurrer it is not argued there was no evidence of the truck driver's negligence but rather that such negligence, if any, in view of appellee's admissions, could not have been the proximate cause of the collision.

It will be unnecessary to detail now the allegations contained in the various pleadings. The negligence with which the various parties were charged will be discussed later in connection with the contentions of the parties.

The accident occurred on U. S. highway 166 at a point approximately eight miles west of Coffeyville and, according to appellee's testimony, on a rainy evening between 6:30 and 6:45 o'clock; both vehicles were traveling in a westerly direction; approximately six miles of the road were concrete and the next two miles were of blacktop construction; the blacktop was twenty-four feet wide; the accident happened on the blacktop; appellee was following appellant's truck prior to and at the time of the collision.

Appellee called as a witness the appellant, John Fahle, who, in substance, testified:

He was the owner of the common carrier truck and semitrailer in question and Carl Lowe was operating it for him on the day in question; the trailer had four wheels, two on each side; the front end of the trailer rested on the rear end of the tractor, or truck; the truck was a 1941 model and was what is known as a cab over-engine; the semitrailer was twenty-six feet long and eight feet wide; the over-all length of the tractor and semitrailer was thirty-four feet; the semitrailer was one foot wider on each side than the tractor, or truck; the semitrailer had a five and one-half foot stock rack on it and it was approximately four feet from the ground to the bottom of the rack, or about nine and one-half feet from the ground to the top of the rack; there were hydraulic brakes on the tractor and air brakes on the trailer; all wheels of the tractor and trailer had breaking equipment which was in good condition; the air pressure for the air brakes was generated by the motor; the air brakes were operated by a special lever under the steering wheel; the foot brake, or

hydraulic brake, which operated on the truck worked faster than the air brakes; it required a few seconds, probably five seconds, for the air to pass from the carburetor on the truck back through the hose after the air brakes were applied; the extent to which the lever was pulled down regulated the suddenness with which the air brakes became effective; in order to stop the entire unit suddenly, you applied the foot brakes and air brakes simultaneously; the weight of both tractor and semitrailer was six and one-half tons empty and on this occasion the tractor was loaded with approximately six tons of chat; a person riding in the cab of the truck was able to see what was behind him by means of a mirror on the side of the cab and he could also look back through the rear window of the cab; a person sitting in the cab could extend his arm out far enough to give a singal so that approximately one foot of his arm would be visible from the rear; the taillight and stop light were operated together from the foot brake; they were located just a little to the left of the center of the rear end of the semitrailer; on the rear end and center of the trailer was a cluster of three lights; at the bottom of the trailer body there were two lights on each corner of the back end; the truck was equipped with a governor which shut off the gas in the motor when the speed reached forty miles per hour.

Charles Shull, the driver of the car in which plaintiff was riding, in substance, testified:

He was the owner of the car which was a 1941 Ford V-8 Tudor sedan; he and W. D. Curtiss, appellee, had left Kansas City, Mo., during the forenoon of the day in question, September 16, 1941, on a fishing trip to Vinita, Okla.; it started to rain near Columbus at 4:30 or 5 o'clock and they decided to discontinue their fishing excursion and go to Dewey, Okla., to see his folks; they stopped at Coffeyville for lunch around 6 o'clock; each of them had a cheese sandwich and a bottle of Kansas beer; they left Coffeyville fifteen or twenty minutes later; they traveled west from Coffeyville at the rate of 55 or 60 miles per hour until they observed the truck ahead of them; when he saw the truck he cut the speed to between 45 and 50 miles an hour; he followed 300 feet behind the truck for a distance of approximately a quarter of a mile and then followed it for approximately a quarter of a mile at a distance of 150 feet to the rear; before the collision and after they had come over a slight rise to the east, they observed a parked car on the north side of the highway; two wheels of the parked car were on and two wheels were

230

off the blacktop; he observed the parked car when he was approximately 600 feet east of the parked car; the truck was then approximately 150 feet ahead of them with its left, or south, wheels on the center of the road; the lights of his car were shining on the truck and he was watching it; while they were 150 feet behind the truck it moved to the left for just a moment as if to go around the parked car, suddenly slammed on its brakes and then pulled back towards the right, or north, side of the highway; he could not say definitely how far the truck and semitrailer had moved to the left, but when it was the farthest to the left, the center of the truck was right over the center of the highway, which left only about 8 feet of the road south of the truck; the speed of the truck was reduced to 5 or 10 miles per hour by the sudden application of the brakes; when the speed of the truck was suddenly decreased, appellee hollered to him, "Look out, Chuck"; he and appellee noticed the sudden decrease of speed at about the same time; he stepped on his brakes as soon as he could and swung to the left to miss the trailer; the front part of his car got past the trailer but his car struck the rear or southeast corner of the trailer just back of the right door handle; the collision tore off the rear axle of his car and the right rear wheel; the fender and body portion of the car on the right rear corner were torn from the car; his car stopped about 150 feet west of the parked car and on the south side of the highway; (the witness later testified that he was mistaken concerning that distance and fixed the distance his car traveled after the collision at approximately 75 feet) at the time the truck driver suddenly decreased his speed there was no car coming from the west; the truck driver gave no signal by hand or mechanical device; after they noticed the sudden decrease in the speed of the truck and before he could set the brakes on his own car, he had covered about one-half of the distance between his car and the truck, or 75 feet; neither he nor Curtiss had drunk any liquor before or after leaving Kansas City; he was not arrested for being drunk or for driving his car while intoxicated; the blotter type of road was a little wavy, like a washboard; concerning the effect of the wavy condition of the road he stated, "I just naturally couldn't stop as quick, would be all"; he doubted whether he would have been able to stop in time if the road had not been wavy; the road was wavy only in stretches; the condition of the road did not interfere with his driving; he did not honk at the time he came up behind the truck because he did not intend to pass the truck while it

was going around the parked car; he intended to pass the truck later and after it had finished moving around the parked car and had returned to its right side of the road; it was raining fairly hard at the time; he did not know the distance within which his car could be stopped traveling at the rate of 50 miles per hour; appellee at no time objected to the speed at which he was driving and said nothing to him about the weather conditions or the distance at which he was following the truck; appellee had said nothing about any of those matters until he hollered, "Look out, Chuck."

The driver of the Ford car further, in substance, testified:

He had the car lights on because it was dark and raining; the highway was not slippery; the truck was somewhere near 100 feet east of the parked car when the truck suddenly slowed down; just before the truck slowed down it had been traveling 45 to 50 miles per hour, which was about the same speed he was traveling, the truck, having reduced its speed to 5 or 10 miles, traveled some distance after it slowed down suddenly and before he struck it; he had already seen the truck slow down when Curtiss hollered, "Look out, Chuck;" he saw no hand or mechanical signal indicating an intention to stop.

The appellee, Curtiss, in substance, testified:

They drove at the rate of approximately 50 miles an hour on the concrete and somewhere around 45 and 50 on the blacktop; it was a slow steady rain; the blacktop was wet, sort of rough, wavy, bumpy and washboardy; it was worse in some spots than at others; he could see no difference in the movement of the car however, except that it was a little wavy; it did not cause any swerving; they made a slow gradual gain on the truck until within about 150 feet of the truck; they followed the truck at that distance between a quarter and an eighth of a mile; the truck was traveling 45 miles an hour when they got within 150 feet of it; their headlights played on the rear of the trailer; although according to the record of the former trial he had testified he saw the parked car at a distance of about 900 feet after they reached the crest of the hill to the east, he was now of the opinion he saw the parked car at a distance of about 300 feet; at any rate he saw the parked car just shortly after they came over the crest of the rise to the east; the parked car was about one-half off the blacktop and one-half on it; after they came over the crest of the hill the left, or south, wheels of the truck were just about on the center line of the highway; when they were approximately

150 feet behind the truck it suddenly swerved to the left so that the center of the equipment of the semitrailer was right over the center of the road; the truck suddenly decreased its speed to approximately 3 or 4 miles per hour, maybe 5, and then swung back to the right; the truck decreased its speed suddenly without hand or other warning; the truck had turned to the left as if to pull around the parked car; at the time the truck was approximately 100 feet east of the parked car; he saw some clearance lights on the rear of the truck but saw no stop light; from the crest of the rise east of the point of collision to the point of collision there may have been a little slope but it was almost level; he saw no cars coming from the west after they came over the crest of the rise and saw no car lights shining over the rise west of where the collision occurred; the time of the collision was around 6:30 or 6:45 p. m.; he did not know the distance within which their car could be stopped traveling at 40 or 50 miles per hour; their car did not stop in time; Shull started applying the brakes at just about the time he hollered, "Look out, Chuck;" the brakes on their car were in perfect condition.

The deposition of Ernest L. Woods, although taken by appellants, was read on behalf of appellee. The material portions thereof, in substance, were:

He, his wife, and a friend of Mrs. Woods were on their way from Caney to Coffeyville and reached the scene of the accident around 8:30, after dark; Curtiss was just being removed from the ditch on the south side of the road; it was raining and had been raining for some time; there was water in the ditches on both sides of the road; five or six cars had stopped before he arrived; he offered to take Curtiss to the hospital at Coffeyville; Curtiss was unconscious; Shull got into the back seat of the car and Curtiss was laid on the floor boards in the back of the car; Shull tried to talk to Curtiss but could get no response; he took Shull and Curtiss to the hospital and then went to the police station to report the accident; the substance of what Shull had told him concerning the accident was that he was driving about 45 miles an hour, that the truck stopped in front of him and he applied his brakes but could not stop in time; he would not say exactly how far a person could see ahead in the rain but at the time it was an ordinary rain and more than a drizzle; the surface of the road at the scene of the accident was slightly rough; he drove Curtiss to the hospital at a

speed of 65 to 70 miles an hour and had no difficulty making the trip.

There was definite evidence of substantial personal injuries but that evidence need not be noted now. Appellee introduced in evidence paragraphs 9 and 14 of rule 16 of the state corporation commission pertaining to the operation of motor vehicles, without objection by appellants. The rule will be noted presently.

Appellee's petition, in substance, charged the driver of the truck was negligent in suddenly decreasing the speed of the truck and semitrailer without first giving notice of his intention to do so. It was charged such conduct constituted a violation of G. S. 1941 Supp. 8-547 and 8-549. It was also charged the truck driver violated paragraphs 9 and 14 of rule 16 of the state corporation commission, promulgated by it in connection with its supervision and control over the operation of common carriers. G. S. 1941 Supp. 8-547 provides:

"(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement, or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. (c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

The pertinent provision of G. S. 1941 Supp. 8-549 reads:

"All signals herein required given by hand and arm shall be given from the left side of the vehicle in the following manner and such signals shall indicate as follows: . . . (3) Stop or decrease of speed—hand and arm extended downward."

Section 48, chapter 283, Laws of 1937, which would have become G. S. 1941 Supp. 8-548, and which pertains to signals by arm or other device, was repealed by section 7, chapter 58, Laws of 1938. That section originally read:

"The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the department, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle then said signals must be given by such lamp or device."

While the above statute was repealed, it would appear the law-

makers did not intend to repeal all provisions of the 1937 general traffic act authorizing the use of mechanical signals, as will presently appear.

Paragraph 14 of rule 16 of the state corporation commission pertains to completely stopped or parked vehicles on a highway and appellee does not now rely upon that paragraph.

He does rely upon paragraph 9 of rule 16 which reads:

"The speed of any motor vehicle shall not be suddenly decreased, nor its course or direction suddenly changed, nor shall it be stopped, except in case of grave emergency, without hand or other signal having been given, and unless the driver thereof shall have assured himself that such movements can be made without endangering other traffic. Any signal given by mechanical or electrical device shall be discontinued as soon as turning movement is completed."

Appellants, for various reasons, insist the rule of the commission cannot form the basis of liability. While there may be merit in some of their contentions, there is no showing in the record such contentions, or any of them, were ever presented to the trial court when it ruled on the demurrer. The rule was pleaded by appellee. The pleading was in nowise challenged. The rule was introduced in evidence as being in full force and effect. No objection of any kind or character was interposed to its admissibility. All parties tried the case on the theory the rule was properly in the case. No specific objection was made to the instructions which covered the rule. Insofar as the appeal in this particular case is concerned the rule must be considered in connection with the pertinent statutes. Of course, the rule pertains to the alleged negligence of the driver of the truck. What appellants are now emphasizing in connection with the ruling on the demurrer is the negligence of the driver of the car and the negligence of appellee in failing to exercise due care in his own behalf.

Appellants concede that for the purpose of the demurrer it must be admitted the truck decreased its speed and that no signal of intention to do so was given by hand or other device. They point out that, under the statute relied upon by appellee, liability is based upon a combination of elements, namely, the sudden stopping or sudden decrease of speed and a failure to warn thereof, and not merely the sudden stopping or sudden decrease in speed. (*Strimple v. O. K. Warehouse Co.*, 151 Kan. 98, 98 P. 2d 169.) The Strimple case supports the contention but in the case at bar both elements of negligence were present. Appellants, however, contend that in

this particular case the failure of the truck driver to give a signal of intention to stop cannot be relied upon by appellee for the reason that both appellee and the driver of the car testified positively that they both observed the sudden decrease in the speed of the truck at the very instant it occurred, without the aid of a signal, and that at such time they were 150 feet removed from the semitrailer. In other words appellants contend appellee in fact had the same notice of the truck driver's intention to decrease suddenly the speed of the truck as a stop signal would have conveyed.

Appellants also emphasize the fact that it is conceded the truck traveled some distance further under its own power between the time it decreased its speed and the time the semitrailer was struck. It is true it traveled some distance and while appellants' testimony throws some light upon that distance, appellee's evidence did not clearly disclose the distance the truck moved during that interval. At any rate appellants argue that whatever the extra distance may have been the fact remains the car in which appellee was riding traveled at a rate of speed which under all the circumstances prevented it from stopping or turning aside in time to avoid the collision.

Appellants maintain the circumstances disclosed by appellee's own testimony concerning the distance between the vehicles, the existence of a parked car on the north side of the highway which was observed by appellee when at least 300 feet away and by the driver of the car 600 feet away, the fact it was dark and raining, the fact the blacktop was wet and wavy, the fact the parties themselves did not know the distance the car could be stopped at a speed of 45 to 50 miles per hour and the fact the car was descending a grade, clearly constitute such negligence as to bar recovery. In this connection they direct our attention to certain provisions of G. S. 1941 Supp. 8-532, which reads:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful: . . . (Here the statute designates specific speeds under circumstances not involved in the instant case.)

"(c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, *or when special hazard exists with respect to pedestrians or*

*other traffic or by reason of weather or highway conditions,* and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care. . . . (f) The foregoing provisions of this section shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence as the proximate cause of an accident." (Emphasis supplied.)

Appellants rely also upon G. S. 1941 Supp. 8-543, which reads:

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. (b) The driver of any motor truck or motor truck drawing another vehicle when traveling upon a roadway outside of a business or residence district shall not follow within 150 feet of another motor truck or motor truck drawing another vehicle. The provisions of this subdivision shall not be construed to prevent overtaking and passing, nor shall the same apply upon any lane specially designated for use by motor trucks."

In relation to the last quoted section it should be observed that in the instant case the trailing car was not attempting to overtake and pass the truck at the time of the collision. The testimony was the driver of the trailing car was not trying to pass the truck at that time and therefore no passing signal was given but that the car was merely following the truck as the truck passed around the parked car.

Appellants rely also upon G. S. 1941 Supp. 8-590, which provides:

"(a) Any motor vehicle may be equipped, and when a signal lamp or device is required under this act shall be equipped, with a signal lamp or signal device which is so constructed and located on the vehicle as to give a signal of intention to stop which shall be red or yellow in color and signals of intention to turn to the right or left, all of which signals shall be plainly visible and understandable in normal sunlight and at night from a distance of 100-feet to the front and rear but shall not project a glaring or dazzling light; except that a stop signal need be visible only from the rear. (b) All mechanical signal devices shall be self-illuminated when in use at the times mentioned in section 81 [8-581]."

Under this section a signal of intention to stop must be visible from a distance of one hundred feet. It would appear the lawmakers intended the driver of a car which is following another car should operate his car in such manner and maintain it under such control as to enable him to stop within the distance the rear warning sign is required to be visible. We think rule 9 of the state corporation commission must be considered and construed in conjunction with the provisions of the general traffic act. In this particular case we think rule 9 must be construed in conjunction with G. S. 1941

Supp. 8-590 and also with G. S. 1941 Supp. 8-547 which requires notice of stopping or sudden decrease in speed to the driver of any vehicle *immediately* to the rear. In other words, we do not think rule 9 was intended to require notice of a signal to stop or suddenly decrease the speed of a car irrespective of how distant the trailing car might be at the time the leading car undertook to stop suddenly or to decrease suddenly its speed.

In *Eldredge v. Sargent,* 150 Kan. 824, 96 P. 2d 870, we said:

"Where the absence of lights or warning signals does not prevent a driver from seeing a vehicle in time to avoid it, the absence of lights or signals cannot be said to be the proximate cause of the collision. (*Anderson v. Sterrit,* 95 Kan. 483, 148 Pac. 635; *Cothran v. Cleenewerck & Son,* 235 Mich. 351, 209 N. W. 132; *Amey v. Erb,* 296 Pa. St. 561, 146 Atl. 141.) See, also, *McCausland v. File,* 141 Kan. 120, 121, 122, 40 P. 2d 323, and cases therein cited." (p. 830.)

To the same effect also is *Wright v. Nat'l Mutual Cas. Co.,* 155 Kan. 728, 129 P. 2d 271.

In the instant case appellee and the driver of the car in which appellee was riding both concede they observed not only the truck but also its sudden decrease in speed without any signal of decrease in speed having been given. This they observed when 150 feet behind the truck. They therefore had the same notice as an arm or mechanical signal would have imported if given at that time.

In the recent case of *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681, we said (see descriptions in the Harrison case of some of the various circumstances under which the rule has been applied, p. 500):

"The general rule is well established that the driver of a motor vehicle must keep his vehicle under such control as will enable him to articulate his speed with his ability to stop, or turn aside, within the range of vision provided by his headlights. This principle has been applied in numerous cases involving varied circumstances. A few of the cases are: *Giles v. Ternes,* 93 Kan. 140, 143 Pac. 491; *Rhoades v. Atchison, T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994; *Haines v. Carroll,* 126 Kan. 408, 267 Pac. 986; *Jones v. Atchison, T. & S. F. Rly. Co.,* 129 Kan. 314, 316, 282 Pac. 593; *Berry v. Weeks,* 146 Kan. 969, 972, 73 P. 2d 1086; *Eldredge v. Sargent,* supra, 832; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Goodman v. Wisby,* 152 Kan. 341, 344, 103 P. 2d 804." (p. 499.)

In numerous cases above cited it repeatedly has been held that a violation of the general rule constitutes contributory negligence as a matter of law. We know of no circumstances which bring the instant case within any of the recognized exceptions to the general rule. Exceptions to the general rule are grounded on the doctrine

that the exercise of ordinary care would not necessarily have prevented the accident. (*Goodman v. Wisby,* 152 Kan. 341, 345-346, 103 P. 2d 804.) Here it clearly appears the exercise of ordinary care required by the general rule would have prevented the collision.

Although a guest is not charged with the negligence of the driver, it does not follow the guest is absolved from the duty to use due care for his own safety. While the negligence of the driver is not to be imputed to the guest, or passenger, the circumstances may be such as to make it the duty of the guest, or passenger, to observe the circumstances and to warn or to attempt to control the driver's conduct for his own protection and safety. This is especially true where the guest, or passenger, has equal opportunity to observe the dangerous conditions and circumstances. (*Bush v. Railroad Co.,* 62 Kan. 709, 64 Pac. 624; *Sharp v. Sproat,* 111 Kan. 735, 208 Pac. 613; *Ferguson v. Lang,* 126 Kan. 273, 268 Pac. 117; *Darrington v. Campbell,* 150 Kan. 407, 409, 94 P. 2d 305.)

In this case appellee was in a position to observe all the existing circumstances the same as was the driver of the car. They had been following this truck for a considerable distance. Appellee knew it was raining and that the blacktop was wet. He knew the blacktop was wavy, bumpy and washboardy and that it was worse at some places than at others. He knew it was sufficiently dark and rainy to require lights. He knew they had been following the truck at a distance of approximately 150 feet for a distance of one-eighth to one-fourth of a mile. Appellee acquiesced in the conduct of the driver. He observed the parked car on the north side of the highway just after they came over the rise from the east and he knew the truck was between them and the parked car. He did not know what distance the car in which he was riding could be stopped at the speed of 45 to 50 miles an hour. Nevertheless he made no complaint of any kind or character relative to the speed at which the car was being driven under the existing conditions. His only utterance was, "Look out, Chuck," and that utterance was made at the same time the driver noticed the danger, which was too late. Under these undisputed facts appellee was guilty of contributory negligence, as a matter of law, in failing to use due care for his own safety, just as the driver was guilty of contributory negligence in the operation of the car.

Appellee argues G. S. 1941 Supp. 8-547 should be construed to require a signal *of intention* to stop the vehicle suddenly or to de-

crease its speed suddenly before the signal is given that the vehicle is stopping suddenly or is decreasing its speed suddenly. In other words, he contends such a signal is required by the statute, where there is opportunity to give it, in order to warn a car to the rear that the lead vehicle intends to stop suddenly or to decrease its speed suddenly at a more distant point. With that contention the court does not agree. Such an interpretation would read into the statute a requirement to give two signals, which the language of the statute does not warrant. In any event the conclusion we have reached in this case is based upon the ground appellee and the driver of the car in which appellee was riding actually observed the sudden decrease in speed 150 feet to the rear of the truck and that the car, under existing circumstances, was not under proper control to enable it to be stopped or turned aside within that distance plus the distance the truck traveled after it suddenly decreased its speed.

The judgment is reversed with directions to the district court to enter judgment for defendants.