Gertrude D'HONDT, Appellant,

v.

James Drake HOPSON, Appellee.

No. 6076.

United States Court of Appeals
Tenth Circuit.

Aug. 6, 1959.

Murrah, Circuit Judge, dissented.

John C. Thurlo, Kansas City, Mo. (Henry G. Eager, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Mo., and J. W. Mahoney, Kansas City, Kan., were with him on the brief), for appellant.

Robert H. Bingham, Kansas City, Kan., (J. E. Schroeder, Lee E. Weeks, Leonard O. Thomas, J. D. Lysaught, Richard Millsap and Ervin G. Johnston, of Stanley, Schroeder, Weeks, Thomas & Lysaught, Kansas City, Kan., were with him on the brief), for appellee.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff was injured when an automobile in which she was riding was driven off the highway by her husband and overturned. She brought this action to recover damages, alleging that the injuries resulted from defendant's negligent operation of his automobile. One of the defenses was that plaintiff failed to exercise due care for her own safety. The court submitted the issue of contributory negligence to the jury, which returned a verdict for the defendant. The questions presented here relate to the duty of a passenger riding in an automobile to warn or remonstrate with the driver who is driving in a dangerous or reckless manner. It is the contention of the plaintiff that the evidence was insufficient to raise the question of contributory negligence and that the court improperly instructed the jury on the subject.

At the time of the accident the plaintiff, her husband and another person were returning from a trip to Canada. They were crossing the State of Kansas in a southerly direction and were nearing the town of Phillipsburg. The two-lane highway upon which they were traveling was paved, and it traversed an area which was somewhat rolling. The car was being driven at an admitted speed of from 70 to 80 miles per hour. It was about to overtake defendant's car which was being driven at a much slower speed in the same direction and was preparing

to make a left turn. This car was seen by plaintiff and her husband when they were at least a quarter of a mile behind it. The plaintiff's version of the accident, corroborated by the testimony of her husband, was that when they were about 150 yards from defendant's auto, their automobile was driven to the left side of the highway for the purpose of passing, and while they were in the act of passing, the defendant gave a left turn signal with his arm and turned in front of their car, forcing it off the highway. Defendant testified that he was traveling at a speed of from 35 to 40 miles per hour and slowed to from 15 to 20 miles per hour preparatory to turning off into a driveway on the left side of the highway; that when within 150 to 250 feet north of the intended turnoff point, he indicated a left turn by extending his left hand and by using a mechanical directional signal; that immediately before the signal was given he looked in the rear vision mirror which provided a view of about 250 yards to the rear, but saw no approaching car. He further related that his car continued at a slow speed to a point within about 50 feet of where the turn was to be made, when the noise caused by the application of brakes and screeching of tires was heard to the rear; that he then observed an automobile skidding diagonally, out of control, and careening toward the east side of the highway. A person riding with the defendant testified that upon hearing the noise from the application of brakes, he looked to the rear and saw a skidding car partially in the west lane of the highway. The skidmarks showed that plaintiff's husband applied the brakes of his car while on the right side of the road. They also showed that the car continued southeast, leaving the pavement on the east side, over 100 feet from where the brakes were first applied. Defendant and the passenger riding with him testified that when the noise

from the application of the brakes was heard they had not yet reached the turn-off point and the left turn had never been started; that after hearing the oncoming car, defendant drove his car to the right side of the highway and came to a stop prior to reaching the intended turnoff point.

It is conceded that the plaintiff did not warn her driver-husband of the approaching danger,[1] remonstrate with him for his excessive speed, or discuss with him the manner in which the car was being operated.

In submitting the question of contributory negligence, the jury was told, in substance, that the plaintiff was required to have used due care for her own safety and, if in the exercise of ordinary care and caution, she should have realized that her husband was driving without proper regard for the safety of himself and others riding with him, she owed a duty to warn him and to remonstrate against such dangerous driving. The court was careful to point out that the duty of a passenger to warn the driver or remonstrate with him about dangerous or reckless driving arises only when there is an opportunity for the warning to be effective. That is, it was emphasized there must be apparent danger which might be avoided by appropriate action on the part of the passenger.

In Kansas, the negligence of a driver is not imputed to a guest or passenger, but the circumstances may be such as to require a guest or passenger to observe the manner in which the automobile is being driven and "to warn or attempt to control the driver's conduct for his own protection and safety. This is especially true where the guest, or passenger, has equal opportunity to observe the dangerous conditions and circumstances." Most v. Holthaus, 170 Kan. 510, 227 P.2d 144; Curtiss v. Fahle, 157 Kan. 226, 139 P.2d 827, 828.[2] Sim-

---

1. Plaintiff testified that she saw the hand signal when first given.

2. The court's syllabus in Curtiss v. Fahle, reads in part:

"5. Although the negligence of a driver is not imputed to a guest, or passenger, it nevertheless is the duty of a guest, or passenger, to exercise reasonable care

ilar rules regarding the duty of passengers were applied in the following cases: Beye v. Andres, 179 Kan. 502, 296 P.2d 1049; Slaton v. Union Electric R. Co., 158 Kan. 132, 145 P.2d 456; Donelan v. Wright, 148 Kan. 287, 81 P.2d 50; Carson v. City of Wichita, 148 Kan. 215, 80 P.2d 1114;[3] Koster v. Matson, 139 Kan. 124, 30 P.2d 107; Naglo v. Jones, 115 Kan. 140, 222 P. 116; Sharp v. Sproat, 111 Kan. 735, 208 P. 613, 615, 26 A.L.R. 1421. In the Sharp case, the court said:

"Of course Sharp could only be held for his personal negligence, and whether or not in the exercise of ordinary care he had time and opportunity to give a warning, make a protest, or take other precautions to avoid injury to himself, was a question of fact for the jury. It is earnestly urged that the distance traveled at an excessive speed was so short and the time that elapsed in going the short distance was so brief that it gave Sharp little, if any, time to caution the defendant or remonstrate with him as to the reckless speed. * * * The time for protesting against the reckless driving was very short, but it cannot be said as a matter of law that there was not sufficient time for protest

after the danger was or should have been realized by Sharp."

■■ The plaintiff was fully aware of the speed at which her husband was driving the car, and she had ample time to remonstrate against such speed before the accident. Also, there is evidence that she observed defendant's arm signal for a left turn when it was first given. Defendant's evidence is that this signal was given for some time before the oncoming car applied its brakes. If the jury believed defendant's testimony, it could have found that the accident might have been avoided by plaintiff calling her husband's attention to the turn signal and warning him of the impending danger in time for him to have stopped or to have reduced his speed prior to reaching a point so near defendant's car. It is quite clear that the automobile in which plaintiff was riding overtook defendant's slower moving car at a very high rate of speed, and that no attempt was made to stop or to reduce the speed until too late. The Kansas decisions require passengers riding in cars driven at excessive speeds to take some action for their own safety. Koster v. Matson, supra; Naglo v. Jones, supra; Sharp v. Sproat, supra. Whether such action is required in a particular case is usually for the jury.

for his own safety and, where he has the same opportunity as a driver to observe the dangerous conditions and circumstances and fails to take any precautions whatsoever for his own safety until it is too late, he is guilty of contributory negligence which bars recovery."

3. In Carson v. City of Wichita, 80 P.2d 1114, 1118, the court said:
"At almost every session of this court we are compelled to deny damages to persons injured in automobile accidents because, however negligent their adversaries in the litigation may have been, they themselves have also been negligent in driving their cars (or riding in them without protest) in situations where they could not see where they were going, and could not be assured that they could proceed with safety. In the recent case of Robinson v. Short, 148 Kan. 134, 79 P. 2d 903, the plaintiff's action was for damages sustained in a collision with de-

fendant's truck on the highway. The accident occurred when a dust storm so dense was blowing that plaintiff could not see more than three feet ahead of her car, but she drove ahead nevertheless, taking a chance that the road was safe. Such a course constitutes contributory negligence by all the rules of law. Still more so, it is contributory negligence for a motorist to operate a car backwards in a strange location in the nighttime with insufficient lights and without taking other sufficient precautions to be assured that he could safely do so. Under the circumstances in this case Carson was in duty bound to look out for his own safety. He knew the driver was operating the car in a manner and in a direction where he could not be sure that it was safe to do so. It was Carson's duty to protest, and if necessary to ask that the car be stopped so that he could alight."

While these requirements may appear to stimulate, or even require, the irritating "back-seat driving" by wives and other passengers, they are imposed by Kansas law which controls in this case.

Affirmed.

MURRAH, Circuit Judge (dissenting).

The law of this case undoubtedly makes every passenger in a moving automobile a "back-seat driver". I can't believe Kansas courts ever intended any such result.